896 F.Supp. 916 (1995)
In re POTASH ANTITRUST LITIGATION.
MDL No. 981. Civ. No. 3-93-197.
United States District Court, D. Minnesota, Third Division.
July 17, 1995.

MEMORANDUM ORDER
ERICKSON, United States Magistrate Judge.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Plaintiffs' informal request that we rule on the following two pretrial issues:
1. Did counsel for the Defendant Kalium ("Kalium") improperly instruct a witness, during the course of a discovery deposition, not to answer questions relating to the content of an interview that the witness had given to representatives of the United States Department of Justice, as a part of an ongoing Grand Jury investigation which parallels the antitrust charges being litigated in this case?
2. Did Kalium improperly communicate with certain putative class members, who are customers of Kalium, about this action after the Court-sanctioned "Notice of Pendency of Class Action" was served upon the class and published?
*917 Argument on these issues was heard during telephone conferences with the parties on July 10 and 11, 1995. Thereafter, the parties were allowed to file expedited Letter Briefs, which would more fully explain their respective positions and would cite any pertinent authorities. We have now considered the parties' Letter Briefs and their request that we expeditiously rule on the matters.
For reasons which follow, we sustain defense counsel's instruction not to answer, and we establish a procedural mechanism so as to supervise the Defendants' direct, written communications, if any, with putative class members.[1]

II. Discussion

A. The Instruction Not to Answer. Once again, we are asked to limn the boundaries of appropriate inquiry in matters closely attendant to a continuing Grand Jury investigation. By Order dated June 20, 1995, we permitted the Plaintiffs to inquire whether a deponent had been asked to appear before the Grand Jury, and to solicit from the deponent the names of any other persons that he or she knew had been called to so testify. We precluded, however, any inquiry into the substance of a Grand Jury witness's testimony. In doing so, we recognized that a "witness" is not among those persons expressly designated in Rule 6(e)(2), Federal Rules of Criminal Procedure, as being prohibited from disclosing "matters occurring before the grand jury." Nevertheless, "we could see little substantive distinction between allowing the Plaintiffs to scrutinize the testimony that has been presented to an active and continuing Grand Jury investigation and permitting the Plaintiffs to review the proceedings of the Grand Jury as they may have been captured by `an interpreter, a stenographer, an operator of a recording device [or] a typist who transcribes recorded testimony,'"  disclosures that are undeniably proscribed by Rule 6(e)(2). Now we are asked to decide if Plaintiffs' counsel may question a deponent on the content of an interview that was conducted by representatives of the Department of Justice as a part of the Grand Jury's inquiry. We conclude that they may not.
As our Court of Appeals recently observed, in In re Grand Jury Investigation, 55 F.3d 350, 353-54 (8th Cir.1995), there is a spectrum in the breadth and in the degree of secrecy which attaches to the proceedings of a Grand Jury.
The purpose of Rule 6(e)(2) is to protect the inner workings of the grand jury. The more a document reveals about that work, the greater the protection it receives under the rule. See In re Grand Jury Proceedings Relative to Perl, 838 F.2d 304, 306-07 (8th Cir.1988). The materials sought by the state vary in their nature. For example, the letters written by participants in the scheme were generated independently of the grand jury and therefore reveal little about its investigation other than that they were available to the grand jury which may have considered them; they are entitled to diminished protection under the rule. Id. at 307. Charts and summaries may reveal somewhat more about what the grand jury considered, but they were prepared by government attorneys or agents and were not the work product of the grand jury. The state is not requesting grand jury minutes or witness transcripts, which are entitled to the greatest protection under Rule 6(e). Id. at 306. The requested materials therefore fall along a spectrum and warrant different levels of protection, but none reveal much about the grand jury's inner workings.
Here, the Plaintiffs seek to trace the inquiries being made by the Department of Justice and, if permitted to finitely probe that investigatory process, we have little doubt but that the Plaintiffs will uncover the substantive content of the Government's presentation to the Grand Jury.
*918 We recognize that there are decisions to the contrary. In Anaya v. United States, 815 F.2d 1373, 1378 (10th Cir.1987), the Court distinguished "a memorandum of the testimony given by a witness before the grand jury [from] a memorandum of what the person told an investigator outside the grand jury room," and concluded that the disclosure of the latter would not violate the secrecy rule. In reaching that conclusion, the Court noted its disagreement with the contrary result that had been reached by the Court in United States v. Armco Steel Corp., 458 F.Supp. 784 (W.D.Mo.1978). We, however, agree with the Court in Armco Steel that the disclosure of the contents of witness interviews "would tend to disclose what transpired before the grand jury." United States v. Armco Steel Corp., supra at 790; see also, In re Grand Jury Proceedings (Daewoo), 613 F.Supp. 672, 682 (D.Ore.1985) (interviews by agent of Grand Jury, before an indictment was returned, were subject to secrecy). If we seem more cautious than the Court in Anaya, we think our wariness is justified by the continuing nature of the Grand Jury proceeding that we confront and that was not a consideration for the Courts in Anaya, Armco Steel, or in Daewoo.
In actuality, by holding that the Plaintiffs are restricted from inquiring as to the contents of the Grand Jury's investigation, including the interviews of the Grand Jury's agents, we do not deprive the Plaintiffs of any information that is relevant to the merits of this action. We do not suggest, and the Defendants have not urged, that any information, which may have been elicited during such interviews, or during a witness's testimony to the Grand Jury, should be privileged. Rather, all that we regard as privileged is the ascertainment of what information was of interest either to the Grand Jury or to the Grand Jury's agents. In this respect, our holding is wholly consistent with the law of this Circuit. See, In re Grand Jury Proceedings Relative to Perl, 838 F.2d 304, 306 (8th Cir.1988) ("Unless a document reveals something about the intricate workings of the grand jury itself, the documents are not intrinsically secret just because they were examined by a grand jury.").[2] Therefore, we sustain the objection of defense counsel and rule that the deponents need not disclose the contents of interviews that have been undertaken in connection with the ongoing Grand Jury investigation.[3]
*919 B. Kalium's Letter to Its Customers. By Order dated May 2, 1995, we resolved a number of the conflicting contentions of the parties, as they related to the provision of Notice to the class, and we prepared for distribution a Notice which, we felt, was "neutral in its content, and [was] `reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" In re Potash Antitrust Litigation, 161 F.R.D. 411 (D.Minn. 1995). Insofar as we are aware, the Court-approved Notice was published and mailed in accordance with the Court's Order, on or about June 30, 1995.
On July 7, 1995, the President and the Vice President of Sales at Kalium transmitted a letter to Kalium's customers which commented upon the "Notice of Pendency of Class Action" that the customers had or would be receiving, and urged the customers to read the Notice carefully and to consult with their own legal counsel or with class counsel. In addition, Kalium's letter expressly avowed Kalium's inability to attempt to influence the customers on their election to opt-in or -out of the action, reiterated Kalium's denial of wrongdoing, and attested to Kalium's intent to litigate its "strong defenses."[4] As Kalium explains, following the distribution of the Notice of Pendency of Class Action, the Company received "almost 20 inquiries" from its customers concerning the Notice and this litigation. In the interests of preserving the Company's "long-standing relationships" with its customers, and in order to provide a uniform and written response to these inquiries, Kalium prepared the letter, with the advice of their counsel in this litigation, and transmitted the same to the Company's customers.
Upon learning, indirectly, about the existence of the letter, the Plaintiffs complain that the letter is misleading, is Kalium's attempt at influencing the class members to opt-out, is violative of ABA Model Rule 4.2,[5] and is sanctionable. For remedial relief, the Plaintiffs request that the Court: "(1) enter appropriate sanctions against Kalium; (2) determine whether there have been other improper communications by Kalium or other defendants; and (3) permit plaintiffs to send a corrective letter to any class member who has been contacted by Kalium or other defendants, with costs of mailing paid by Kalium." In order to preserve the status quo, while the issue was under advisement, we directed that the Defendants refrain from communicating with the putative class members, concerning the merits of this case, until further Order of the Court.
*920 Quite logically, the Plaintiffs have cited and relied upon a series of decisions which were prompted by abusive communications from defense counsel to class members, and which emphasize the Court's responsibility, under Rule 23(d), Federal Rules of Civil Procedure, to supervise the conduct of the parties so as to preserve the integrity of the class action. See, e.g., Kleiner v. First Nat. Bank of Atlanta, 751 F.2d 1193 (11th Cir. 1985); In re Federal Skywalk Cases, 97 F.R.D. 370 (W.D.Mo.1983); Resnick v. American Dental Ass'n, 95 F.R.D. 372 (N.D.Ill.1982); Impervious Paint Industries, Inc. v. Ashland Oil, 508 F.Supp. 720 (W.D.Ky.1981), appeal dismissed without opinion, 659 F.2d 1081 (6th Cir.1981). On the other hand, Kalium principally relies upon those cases which recognize a litigant's First Amendment right to free speech. See, e.g., Gulf Oil Corp. v. Bernard, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); In re School Asbestos Litigation, 842 F.2d 671 (3rd Cir.1988); Domingo v. New England Fish Co., 727 F.2d 1429 (9th Cir.1984), modified on other grounds, 742 F.2d 520 (9th Cir.1984); Williams v. United States District Court, 658 F.2d 430, 436 (6th Cir.1981), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); Zinser v. Continental Grain Co., 660 F.2d 754 (10th Cir.1981), cert. denied, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982).
Having reviewed the authorities that the parties have cited and the circumstances which, apparently, prompted Kalium's letter, we would first observe that the letter was not a covert expression, nor was it coercive, abusive or fundamentally misleading. Rather, the letter encourages the putative class members to read the Notice of Pendency of Class Action carefully, to consult with legal counsel, and to make certain elections. While acknowledging the impropriety of any comment on the merits, however, the letter does express Kalium's belief in its own innocence and, in that respect, we think the letter pushes the envelope of proper comment. The intent of Rule 23(c)(2), Federal Rules of Civil Procedure, in providing the class with the "best notice practicable under the circumstances," would be entirely frustrated if, following the Court-sanctioned Notice, the Defendants were at liberty to freely comment upon the merits of the action, in private communications with class members, and in ways that may be adverse to the Notice that the Court had authorized. See, Georgine v. Amchem Products, Inc., 160 F.R.D. 478, 490 (E.D.Pa.1995); Hampton Hardware, Inc. v. Cotter & Co., Inc., 156 F.R.D. 630, 632 (N.D.Tex.1994). As explained in In re School Asbestos Litigation, supra at 683:
A district court's duty and authority under Rule 23(d) to protect the integrity of the class and the administration of justice generally is not limited only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class.
Nevertheless, we find no basis here to impose a gag-Order which would unfairly and, perhaps, unconstitutionally deprive the Defendants of their right to free, commercial expression. Although unnecessarily commenting upon their self-proclaimed innocence, Kalium's letter says no more than the Court-authorized Notice, except that it expresses the correlating provisions as individualized with respect to Kalium. Accordingly, we find no reason to grant the remedial relief that the Plaintiffs have requested.
However, we deem it to be critical to our role in preserving the integrity of this process, and in assuring the deliberative election of class members to opt-in or -out, that we supervise the communications of Defendants with putative class members as they relate to the merits of this litigation. As the most recent edition of the Manual for Complex Litigation recognizes:
Once a class is certified, the rules governing communications apply as though each class member is a client of class counsel. Under accepted ethical principles, defendants and their attorneys may communicate on matters regarding the litigation with class members who have not opted out, but only through class counsel. Communications with class members in the ordinary course of business, unrelated to the litigation, are not barred.
*921 Manual for Complex Litigation, § 30.2 at page 234 (3rd Ed.1995). Frankly, we seriously doubt that Kalium's letter did anything more than provoke this dispute. Certain it is that Kalium's customers were previously aware of Kalium's intent to defend the charges against it, and the remainder of the letter acknowledges the impropriety of any further, meaningful comment on the substance of those defenses. In any event, we are fully satisfied that Kalium's letter did not disrupt the neutrality of the advices contained in the Court-authorized Notice.
In order to fulfill our supervisory role, therefore, we direct each Defendant, who has communicated in writing with the putative class members on the merits of this litigation, since the certification of the class, to lodge a copy of that writing with the Court, within 15 days of the date of this Order. The Court will conduct an in camera review of any such writing and, absent a showing of privilege, will disclose the same for the Plaintiffs' review. As to any anticipated written communications with the class, concerning the merits of this litigation, the Court directs that any Defendant who intends to so communicate shall provide a copy of the writing to the Court and to the Plaintiffs as class counsel.[6] Should exigent circumstances require a divergence from the procedure we prescribe, the parties are free to further address the matter as circumstances warrant.[7]
IT IS SO ORDERED.
NOTES
[1] Putative class members have until August 30, 1995, by which to opt-in or -out of the class. Necessarily, our ruling only applies to circumstances as they presently exist, and we express no opinion on communications which may have occurred prior to the certification of the class, or which may occur after the putative class members make their election on their further participation in this proceeding. Although obvious parallels exist between written and oral communications, only the Defendants' direct, written communications to the class are at issue, and we limit our ruling to the issue before us.
[2] We wish to emphasize that the same considerations, coupled with what we understand to be the law of this Circuit, persuaded us to allow the identification of those witnesses who were known to a deponent as having testified before the Grand Jury. Since an independently generated document, such as a business record, is not privileged from disclosure  merely because the document had been presented to a Grand Jury  neither should the identification of a Grand Jury witness be privileged, since that disclosure would not reveal the "inner workings" of the Grand Jury itself. Moreover, at the time that we confronted the issue, the witness's identity was no longer a secret and, by requiring the deponent to share his knowledge of the witness's identity, we were doing no more than placing the parties on an equal footing. Unlike the identity of the witness, however, the testimony of that witness is unquestionably privileged as an invasion into the Grand Jury's inner workings.
[3] In addition to the instruction not to answer, the Plaintiffs also contest a series of objections which generally relate to the same issue, and they seek our ruling on those objections as well. With respect to defense counsel's objection, that the deponent need not disclose the names of any Grand Jury witnesses whose identities were provided by the deponent's counsel, we find the objection to be without merit. Unless the information is otherwise privileged, the mere communication of a historical fact, by an attorney to his client, does not, in our judgment, cloak that fact with privileged status. As to the remaining objections, in view of our ruling on the primal issuethe secrecy of the contents of the interview itself, we see no useful purpose to be served by those questions which seek to discover who else was present at the interview, whether notes were taken, and the like. Therefore, we sustain those objections of defense counsel. As we related in our Order of June 20:

[W]e have some concern that the discovery of the substance of a deponent's Grand Jury testimony will result in a preoccupation with issues that are properly committed to the Grand Jury without any substantive advancement of the Plaintiffs' discovery interests in this litigation. Where, as here, the Court has attempted to reasonably limit the expansiveness of discovery, this potentiality presents a real and troubling concern.
Regrettably, these words now seem to have been prophetic. We recognize that the Plaintiffs have an understandable, natural attraction toward the Grand Jury's investigative efforts  much, perhaps, as a moth toward flame  but we do not believe that the Grand Jury's functioning should properly receive the scrutiny that the Plaintiff propose.
[4] In full, the text of the letter reads as follows:

In the last two days we have received several questions about a "notice of pendency of class action" which you have or will shortly get by mail. This is sent by lawyers who have been certified by a federal court to represent a class of potential claimants against certain potash producers, including Kalium, in an ongoing lawsuit alleging a price fixing conspiracy by these producers. We urge you to read it carefully and consult with your own legal counsel and/or the class lawyers.
By law, Kalium is prevented from seeking to influence you during this period. You have to decide for yourself whether or not to participate and, if to participate, whether to do so represented by class counsel. Kalium's parent, The Vigoro Corporation, has stated publicly for the past two years that
THE COMPANY BELIEVES NEITHER KALIUM CHEMICALS, LTD. NOR KALIUM CANADA, LTD. ACTED IN CONCERT WITH OTHERS TO FIX PRICES IN VIOLATION OF THE U.S. ANTITRUST LAWS OR ANY OTHER LAWS.
We are defending against these claims and believe we should prevail in this litigation with strong defenses we are not free at this time to discuss with you. We remain committed to providing you with the best product and service at competitive price and value our relationship with you.
[5] Model Rule 4.2 provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
We decline the Plaintiffs' invitation to assess the compliance of Kalium's counsel with the requisites of this Rule. While we would have preferred that counsel for Kalium would have referred the issue to the Court in the first instance, for reasons we address in the text of this Order, if a breach of Rule 4.2 occurred, then the breach was de minimis.
[6] By not prohibiting the Defendants from writing to the class, we have attempted to strike a proper balance between their right to commercial free speech, and the Plaintiffs' right to counsel without unnecessary intrusion from the Defendants. While we do not anticipate their occurrence, if abuses arise, the Court is not powerless to invoke a variety of remedial measures. See, e.g., Haffer v. Temple Univ. Of Com. Sys. Of Higher Ed., 115 F.R.D. 506, 512 (E.D.Pa.1987); Tedesco v. Mishkin, 629 F.Supp. 1474 (S.D.N.Y.1986); In re Federal Skywalk Cases, 97 F.R.D. 370, 379 (W.D.Mo. 1983).
[7] In its Letter Brief to the Court, Kalium has expressed its intention to make available, to any interested class members, certain documents which Kalium believes are supportive of its defenses in this matter. In the absence of a fuller Record, we do not address the advisability of such a procedure, particularly in view of Kalium's stated intention to raise the matter for the Court's attention prior to making the disclosures that are planned.