Suzanne JONES, Les and Lauren Rosen, and Dean and Lisa Sacerdote, Plaintiffs,

v.

JELD–WEN, INC., Defendant,

Jeld–Wen, Inc., individually and as assignee of the claims of Cardinal IG Company, Third–Party Plaintiff,

v.

Nebula Glass International Inc., d/b/a "GLASSLAM" and "N.G.I. Inc.," and Reichhold, Inc., Third–Party Defendants.

No. 07–22328–CIV.

United States District Court, S.D. Florida.

May 9, 2008.

Joel Stephen Perwin, Anthony Sanchez, Miami, FL, Manuel Leon Dobrinsky, Randy Rosenblum, Todd Omar Malone, Freidin & Dobrinsky PA, Miami, FL, George K. Lang, Matthew Sheynes, Freed & Weiss, Chicago, IL, Richard J. Burke, Richard J Burke Llc, St. Louis, MO, for Plaintiffs.

Kimberly Lynn Boldt, Alters, Boldt, Brown, Rash & Culmo, P.A., Boca Raton, FL, Louis L. Williams, Williams & Heffling, Louis L. Williams, Williams & Heffling, West Palm Beach, FL, Richard N. Sieving, Sieving & Momjian LLP, Sacramento, CA, Cindy Shatkin, Fowler White Boggs Banker PA, Fort Lauderdale, FL, Gretchen R. Jensen, Jeffrey L. Goodman, Goodman & Associates PC, Des Moines, IA, Mark D. Folk, Michele Giovanni Johnson, Louis Robert Bourgeois, Fowler White Boggs Banker, Tampa, FL, Stephen G. Morrison, Susan M. Glenn, Nelson Mullins Riley & Scarborough, Columbia, SC, for Defendants.

Benjamine Reid, Carlton Fields, Miami, FL, Christina M. Schwing, Robert Troy Smith, Holland & Knight, Jacksonville, FL, Amy Lane Hurwitz, Carlton Fields, Sanford Lewis Bohrer, Scott Daniel Ponce, Holland & Knight, Miami, FL, for Third Party Defendants.

## *ORDER*

ROBIN S. ROSENBAUM, United States Magistrate Judge.

This matter comes before the Court upon Plaintiffs' Motion for Court Supervision of

Communications Between Defendant Jeld–Wen and the Putative Class [D.E. 132], pursuant to an Order of Reference entered by the Honorable William P. Dimitrouleas. [D.E. 137]. The Court has fully reviewed the Motion, Jeld–Wen's Opposition to the Motion [D.E. 137], and the record in this case. The undersigned has also heard argument from counsel during a hearing held on April 28, 2008, and is otherwise fully advised in the premises. For the reasons set forth below, the Motion for Court Supervision of Communications Between Defendant Jeld–Wen and the Putative Class [D.E. 132] will be granted in part and denied in part.

## INTRODUCTION

The background of the instant litigation is necessary for a full discussion of the issues now before the Court for consideration. As such, the Court will set forth those facts necessary to understand the context in which the Motion for Court Supervision is brought.

### A. The Underlying Facts

In this case, Plaintiffs Suzanne Jones, *et al.*, purchased laminated glass made and sold, in the first instance, by Defendant and Third–Party Plaintiff Jeld–Wen, Inc. ("Jeld–Wen"), an Oregon corporation. To produce the glass at issue, Jeld–Wen used a patented process that it licensed from Third–Party Defendant Nebula Glass International, Inc. ("Glasslam"), a Florida corporation. Additionally, Glasslam sold Jeld–Wen resin that Jeld–Wen used in the glass-making process. More specifically, the patented Safety Plus Laminated Glass-making process involved sandwiching together a piece of glass, resin, a thin piece of polyethylene terephthalate polyester ("PET") film, more resin, and another piece of glass. When prepared properly with effective ingredients, the impact resistant glass was supposed to function for at least ten years. Instead, however, Jeld–Wen's customers began experiencing Safety Plus failures in the form of delamination and discoloration of the glass before ten years after installation had elapsed.

As it turned out, the resin Glasslam sold to Jeld–Wen was defective in that it either did not contain any ultraviolet light blocker, or it contained too little or ineffective versions of ultraviolet light blocker. Additionally, the resin had not been cooked to the proper temperature. Consequently, sunlight on the Safety Plus glass could cause the resin to fail, resulting in delamination and discoloration. Glasslam purchased the resin it sold to Jeld–Wen from Third–Party Defendant Reichhold, Inc. ("Reichhold"), a Delaware corporation that manufactured the product.

### B. The Procedural History

#### 1. Glasslam I

Upon receiving complaints about delamination and discoloration from customers other than Jeld–Wen, Glasslam investigated and discovered the problems with Reichhold's resin. *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1206 (11th Cir.2006) ("*Glasslam I*"). Thus, in 2002, Glasslam filed suit against Reichhold for damages sustained as a result of Reichhold's defective resin. *Id.* The case fell to Judge Dimitrouleas, within this Court.

Before trial, this Court precluded Glasslam from presenting at trial any future replacement claims unrelated to any of the specific customer complaints Glasslam had identified in its Rule 26, Fed.R.Civ.P., disclosures and interrogatory answers. Accordingly, at the trial, this Court instructed the jury as follows: "Glasslam may only seek to recover damages for those specific claims which have been presented to you during this trial. You should not consider at this time any damages for future claims which have not been specifically presented in this trial." *Id.* at 1209. The jury returned a verdict of $22,500,000.00 for Glasslam, which was comprised of $1,271,379.00 in out-of-pocket damages, $14,-665.621.00 in unpaid customer claims, and $6,563,000.00 in lost profits. *Id.* at 1207. On appeal, the Eleventh Circuit affirmed the judgment.

#### 2. Glasslam II

Following the conclusion of *Glasslam I*, Glasslam filed a second lawsuit against Reichhold in Case No. 05–60704–CIV–DIMITROULEAS (S.D.Fla.) ("*Glasslam II*"). In that action, Glasslam sought compensation

for damages incurred as a result of Reichhold's defective resin, relating to glass not claimed in *Glasslam I*. Instead of proceeding to trial, however, the parties settled the matter and entered into a stipulation of dismissal with prejudice. *Glasslam II*, D.E. 132. Accordingly, the Court dismissed the action with prejudice. *Glasslam II*, D.E. 134.

### 3. *Jeld–Wen I*

Before Glasslam and Reichhold settled *Glasslam II*, Jeld–Wen sued Glasslam, among others, in Case No. 05–60860–CIV–DIMITROULEAS (S.D.Fla.) ("*Jeld–Wen I*"). Glasslam then filed a third-party complaint against Reichhold in that action. *Jeld–Wen I*, D.E. 32.

To address consumers' concerns regarding delamination of the Safety Plus glass, Jeld–Wen instituted a process by which it received customers' complaints and then scheduled inspections of all Safety Plus glass in the windows and doors of the structure. *Jeld–Wen I*, D.E. 74, p. 3. If delamination existed, Jeld–Wen established a time for repair and replacement of the glass at issue. *Id.* Pursuant to an order issued on July 11, 2006, in *Jeld–Wen I*, [*Jeld–Wen I*, D.E. 76], all parties were to receive notice of repairs performed by Jeld–Wen on its customers' windows and were to be permitted to attend such repairs under the conditions established by the Court in its Order. Additionally, the Order authorized formal and informal third-party discovery after Jeld–Wen completed repairs on the targeted customer's property. *Id.* at 3–4. In so directing, the Court expressly noted that the restriction was "meant to protect Jeld–Wen's customers from unnecessary contact and to preserve Jeld–Wen's relationships with its customers." *Id.* (citations omitted); *see also Jeld–Wen I*, D.E. 245, p. 2.

As the discovery cut-off in the case approached, it became obvious that Jeld–Wen was not going to be able to complete repairs on all of the properties for which it was seeking damages. Consequently, the Court held that the *Jeld–Wen I* defendants could be required to defend against claims for particular windows only where they had been provided with the opportunity to conduct discovery with respect to the windows in question (those windows where repairs had been completed). *Jeld–Wen I*, D.E. 245, p. 10. In so directing, the Court expressly pointed out that Jeld–Wen remained free to pursue its claims in a subsequent action for other windows not inspected, repaired, and replaced by the close of the discovery period. *Id.* at 8.

On June 26, 2007, following a trial, the jury concluded that defective resin that Glasslam supplied Jeld–Wen served as a legal cause of damages sustained by Jeld–Wen. *Jeld–Wen I*, D.E. 362. On the other hand, in considering the amount of "legally caused damages" with respect to each of the 77 individual houses containing Jeld–Wen windows at issue, the jury declined to award any damages at all for 46 of the homes. *Id.* at 2–6. As for the remaining 31 houses, the jury awarded a total of more than $1 million in damages. *Id.*

### 4. *Jeld–Wen II*

As *Jeld–Wen I* did not address Jeld–Wen's claims for damages regarding windows for which inspections, repairs, and replacements had not been completed by the close of discovery in *Jeld–Wen I*, on September 5, 2007, Jeld–Wen filed Case No. 07–22326–CV–DIMITROULEAS (S.D.Fla.), another action to seek damages for windows in which it utilized Glasslam's Safety Plus method and Reichhold's resin, which were not considered during the course of *Jeld–Wen I*. That case is still pending with trial scheduled to begin on June 9, 2008.

During the course of discovery in *Jeld–Wen II*, in response to Jeld–Wen's and *Jeld–Wen II* defendants' dueling motions, the Court entered a protocol order to govern the preservation and testing of evidence. Although the *Jeld–Wen II* defendants had also sought through their motion for the protocol a restriction on the *Jeld–Wen II* defendants' ability to contact Jeld–Wen's customers (in an apparent effort to limit the triable glass to those houses where repairs had been completed after *Jeld–Wen I* and before the *Jeld–Wen II* trial), the Court declined the *Jeld–Wen II* defendants' invitation in that regard and imposed no restrictions on any of the *Jeld–Wen II* parties' interactions with Jeld–Wen's customers.

### 5. *Jones*

Meanwhile, on August 14, 2007, Plaintiff Suzanne Jones, acting individually and on behalf of similarly situated Florida residents and businesses, filed the instant matter ("class action")[1] against Jeld–Wen in the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County.[2] [D.E. 1]. Defendant Jeld–Wen removed the case to this Court on September 5, 2007, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332. [D.E. 1]. On January 18, 2008, after Plaintiff filed her Amended Class Action Complaint [D.E. 83], Defendant Jeld–Wen filed its Third–Party Complaint against Glasslam and Reichhold. [D.E. 90].

In this case Plaintiffs contend that Jeld–Wen knowingly manufactured and sold defective impact-resistant windows that are subject to failure. More specifically, Plaintiffs allege that Jeld–Wen supplied a product into the stream of commerce that was not fit for its intended purpose and forced class members to expend money to install replacement windows and glass doors. Simply put, Plaintiffs assert that Jeld–Wen "committed a deceptive, misleading and unfair trade practice by supplying windows and glass doors that were marketed as 'hurricane-resistant' which were not hurricane resistant, not suitable for commercial or residential use and were subject to fail." D.E. 83 at p. 3.

The class action contains allegations that upon learning of the defective Reichhold resin, Jeld–Wen should have disclosed the inherent defect to its customers, and should have fully compensated those customers for the damages that arose from the defective glass. Plaintiffs contend that although Jeld–Wen has conceded that the windows are subject to failure, individual customers are being held responsible for charges associated with installing the replacement windows. In their class action Complaint, Plaintiffs bring suit for (1) breach of implied warranty of merchantability, (2) breach of implied warranty of fitness for a particular purpose, (3) violation of the Florida Deceptive and Unfair Trade Practices Act, and unjust enrichment. D.E. 83. Plaintiffs seek for the Court to award them damages for restitution, injunctive relief, declaratory relief, pre-judgment and post-judgment interest, and for their attorneys' fees and costs. *Id.* Since the filing of the class action, eleven unopposed motions requesting exclusion from the class have been granted, with one motion opposed by Plaintiffs now pending before the Court. As a result of the granting of these motions, approximately fifteen individuals have opted out of the class action.

### C. *The Pending Motion*

In the Motion now before the Court, Plaintiffs seek Court supervision of communications between Jeld–Wen and the putative class, as well as an order allowing Plaintiffs to take discovery regarding Jeld–Wen's communications with putative class members. Plaintiffs state that they recently learned that Jeld–Wen has sent written communications to members of the putative class in which it is offering to repair defective windows at a discount "in lieu of the class action case." D.E. 132. Plaintiffs contend that these communications are "in direct violation of the rules of communications with putative class members." *Id.* Although Plaintiffs' counsel states that he had previously sent a letter requesting Jeld–Wen to cease improper class communications, and Jeld–Wen assured him that it was not conducting any such communications, on March 18, 2008, Plaintiffs' counsel received a letter demonstrating that Jeld–Wen continued to communicate with putative class members.

The Motion centers around two communications with Jeld–Wen customer Martha Zeik—one an e-mail dated December 7, 2007, and the other a letter dated October 15, 2007.

The October 15, 2007 letter states in pertinent part:

---

1. Although the present case has not at this time been certified as a class action, for purposes of clarity and convenience, this Order refers to it as such. This reference is not intended to suggest in any way that a determination with respect to class certification has been made.

2. Jones also filed the state Complaint against Glasslam and Cardinal IG, but subsequently dismissed the Complaint without prejudice as it related to them.

It has been determined that the laminated glass in your windows and/or doors may have been manufactured with a defective resin sold to JELD–WEN by its suppliers. The use of the defective resin in the laminated glass may affect the ability of that glass to perform as intended. Until such time as the laminated glass is replaced, extreme caution and prudence should be exercised if severe storm conditions arise.

You should also know that on August 14, 2007, a Florida lawsuit was filed which purports to be on behalf of persons owning JELD–WEN windows and/or doors containing defective resin and laminated glass. The lawsuit is entitled *Suzanne Jones v. Nebula Glass, et al.,* Miami–Dade County Circuit Court, 11th Judicial District, Case No. 07–25640CA25 (removed as U.S. District Court, Southern District of Florida, Miami Division, Case No. 07–CV–22328) (hereinafter "Jones litigation"). This lawsuit alleges a class action claim against the suppliers of the defective resin and JELD–WEN. The class allegations may include you as a member of the plaintiff class.

Unfortunately, given that your home may now be involved in the Jones litigation, JELD–WEN must postpone any further work with respect to replacement of the laminated glass in your home. Until such time as the manufacturer and supplier of the defective resin accept responsibility for the laminated glass replacement, JELD–WEN must hold your warranty claim in abeyance.

D.E. 133 at p. 11.

The December 7, 2007, e-mail states in pertinent part:

We found that the rot in the frame at unit 1.03a3 is severe enough for JELD–WEN to make an offer on, in lieu of the class action case. Our normal offer would be a replacement door due to the bad / delaminated glass, but because the frames have rot, which are not covered by the warranty, our offer is to sell you a full frame, along with the sidelites, at 60% off list.

\* \* \*

D.E. 133 at p. 7–8.

Ultimately, Plaintiffs seek for the Court to supervise all future Jeld–Wen communications with members of the putative class. Additionally, with regard to the prior communications, Plaintiffs ask the Court to allow discovery. Specifically, Plaintiffs seek discovery regarding any kind of reimbursement program and responses to Plaintiffs' proposed discovery requests. Plaintiffs argue that without oversight of Jeld–Wen's alleged "secret reimbursement program, the putative class may be misled or confused as to their rights, similarly situated class members may be treated differently, and the administration of this litigation may be compromised." D.E. 132 at p. 5. Plaintiffs' counsel urges that since the filing of the class action, an "abnormal" number of requests for exclusion from the putative class have been filed and the facts surrounding the exclusion requests are unknown to counsel. Counsel contends that these facts raise suspicion that improper communications on the part of Jeld–Wen may have motivated some of the requests.

Jeld–Wen responds to the Motion, asserting that its communications with unnamed class members are "entirely proper" and that it is not offering a "secret reimbursement program" to its customers. D.E. 149 at p. 2. Instead, Jeld–Wen states that during the course of the previous litigation, set forth *supra,* it set up an office of its Product Integrity Group in Florida to manage the number of complaints for delamination and discoloration that it had begun to receive from its customers. Jeld–Wen then began a process of remediating the problems caused to its customers by the defective resin, including providing replacement windows and doors for the products that contained the defective Reichhold resin.

Jeld–Wen emphasizes its interpretation of the *Jeld–Wen I* verdict, theorizing that apparently, in awarding no damages for some customers (including Plaintiff Jones in this case), the jury believed that Jeld–Wen was providing too much to its customers if it addressed any of those customers' concerns other than those provisions outlined in Jeld–Wen's express written warranty. That un-

derstanding, coupled with the filing of the class action Complaint, in which Jones and others allege that Jeld–Wen did not do enough in the repair of her windows, left Jeld–Wen in what it deems a "Catch–22." D.E. 149 at p. 3.

In light of the situation, Jeld–Wen explains that it decided to postpone its repair program and sent a letter to certain customers who had contacted Jeld–Wen about the replacement of their windows and doors. *Id.* Jeld–Wen describes the correspondence as providing information to customers that they might be a member of a putative class action and notification that Jeld–Wen was postponing any further repairs on that customer's claim. Evidently, Jeld–Wen suggests, some of the customers did not agree with Jeld–Wen's decision to postpone the repair process, and these customers began calling Jeld–Wen, stating that they did not want to be part of the class action process. *Id.* Jeld–Wen claims that at no time did it contact any homeowner and suggest that he or she opt out of the class action.

Jeld–Wen argues that with regard to the e-mail, when the communication is viewed in its entirety, it is clear that it does not constitute a global offer to repair the customer's Jeld–Wen products if she opts out of the class action. Instead, according to Jeld–Wen, the e-mail merely extends a limited offer to the customer for one of the products used in her home. According to Jeld–Wen, it intended the e-mail to address the customer's concern about wood rot that had affected the frame of a door. This offer was not a suggestion to opt out of the class nor an offer of a "secret reimbursement program." *Id.* at p. 5. Rather, this offer was aimed at repairing a product not at issue in the current litigation—a door frame.

As for the letter, Jeld–Wen contends that well before the class action was filed, it was taking steps to address concerns of its customers whose products contained defective Reichhold resin. Jeld–Wen's decision to postpone its repair program, it asserts, was reasonable in light of the "Catch–22" it found itself in.

In sum, Jeld–Wen asserts that the communications that it had with its customers who are putative class members are not inappropriate or abusive. Jeld–Wen emphasizes that, particularly in the pre-certification stage, there is no attorney-client relationship between Plaintiffs' class counsel and the putative class members. *Id.* at p. 6. Thus, any communications with the putative class are not communications with represented parties. According to Jeld–Wen, it is permitted to communicate with its customers to take remedial measures and, therefore, reach settlement agreements with members of the putative class. These communications, in Jeld–Wen's opinion, did not mislead the putative class members, encourage them to opt out of the class, or otherwise misrepresent the status or effect of the pending class action. *Id.* at p. 8. For these reasons, Jeld–Wen argues that Plaintiffs' Motion must be denied.

## DISCUSSION

■ Rule 23, Fed.R.Civ.P., governs class actions in federal court. Because of the potential for abuse, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Company v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Indeed, the Court bears the responsibility under Rule 23(d) to preserve the integrity of the class action. *See, e.g., Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985). For this reason, Rule 23(d), Fed.R.Civ.P., provides the Court with the authority to issue orders to protect class members, impose conditions on the representative parties, and deal with similar procedural matters. The Court's discretion, however, is not unlimited. The authority provided to the Court by Rule 23(d) to exercise control over a class action must, instead, be exercised within the boundaries of the Supreme Court case of *Gulf Oil, supra.*

In *Gulf Oil,* the Supreme Court upheld a Fifth Circuit decision that struck down a gag order in an employment discrimination class action case. The order entered by the trial court required prior judicial approval of all communications by parties and their counsel with any actual or potential class members.

*Id.* at 103, 101 S.Ct. 2193. The Supreme Court ruled that the trial court exceeded its authority in entering the order since the record revealed no grounds on which the court could have determined that it was necessary to impose an order that "involved serious restraints on expression." *Id.* at 103–104, 101 S.Ct. 2193. Because, however, the Court recognized the possibility of abuses in class action litigation that may be implicated by communications with potential class members, *Gulf Oil* acknowledged that courts may issue orders limiting certain communications.[3] *Id.* at 104, 101 S.Ct. 2193.

 The Court recognizes that unilateral communications between a party and putative class members have the potential for coercion. Indeed, particularly "[i] f the class and class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1202–1203 (11th Cir.1985) (citations omitted). As the *Kleiner* Court noted, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal." *Id.* at 1203. Hence, the Court appreciates Plaintiffs' heightened concern with respect to Jeld–Wen's unilateral communications with its customers. On the other hand, Jeld–Wen's mere communication with its customers, without more, does not necessarily warrant limitations on Jeld–Wen's speech as it relates to those customers.

Since *Gulf Oil,* courts have set forth the standard that must be met when a party seeks to restrict communication to putative class members. In so doing, courts have emphasized that the moving party must make an evidentiary showing of actual or threatened abuse by the party sought to be restrained. *See Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc.,* 214 F.R.D. 696 (S.D.Ala.2003) and cases cited therein. In this regard, a two-pronged test must be met before a court may restrict communication. First, a communication must have occurred or be threatened to occur. *Id.* at 697. Next, the form of communication at issue must be abusive in that "it threatens the proper functioning of the litigation." *Id.* at 698. Communications that have been found to be violative of the principles of Rule 23 include misleading communications to class members regarding the litigation, communications that misrepresent the status or effect of the pending action, communications that coerce prospective class members into excluding themselves from the litigation, and communications that undermine cooperation with or confidence in class counsel. *See Hampton Hardware, Inc. v. Cotter & Company, Inc.,* 156 F.R.D. 630, 632 (N.D.Tx. 1994) (citations omitted); *Cox,* 214 F.R.D. at 698.[4]

Even if the two prongs of this test are met, any resulting order "limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil,* 452 U.S. at 101, 101 S.Ct. 2193. Indeed, the resulting order must be carefully drawn so that it interferes with free speech as little as possible. *Id.* at 102, 101 S.Ct. 2193 (citing *Coles v. Marsh,* 560 F.2d 186, 189 (3rd Cir. 1977), *cert denied,* 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977) (court must give explicit consideration to the narrowest possible relief which would protect the respective parties)). "Nevertheless, a limited restriction—such as precluding a defendant from soliciting class members to opt out of the litigation—will sometimes be justified." *Great Rivers Cooperative of Southeastern Iowa v.*

---

3. Although *Gulf Oil* involved contact with a putative class by plaintiff's counsel, lower courts have applied the case to contact initiated by defendants and their counsel as well. *See Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985); *Great Rivers Cooperative of Southeastern Iowa v. Farmland Industries, Inc.,* 59 F.3d 764 (8th Cir.1995); *Cox Nuclear Medi-*

cine v. Gold Cup Coffee Services, Inc., 214 F.R.D. 696 (S.D.Ala.2003).

4. Restrictions on the communication of settlement offers are subject to the same proof requirements. *See Cox,* 214 F.R.D. at 698 (citing *Bublitz v. E.I. duPont de Nemours and Co.,* 196 F.R.D. 545, 548 (S.D.Iowa 2000)).

*Farmland Industries, Inc.,* 59 F.3d 764, 766 (8th Cir.1995) (quoting Manual for Complex Litigation, Second § 30.24 at 232 (citing *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985))).

█ Here, there is no question that Jeld–Wen has communicated with putative class members. The October 15, 2007, letter and December 7, 2007, e-mail submitted by Plaintiffs in support of their Motion makes this fact clear, and Jeld–Wen does not dispute that communications with putative class members have·occurred. Plaintiffs have thus satisfied their burden of showing that a particular communication has occurred or is threatened to occur.

The real issue here is whether either of the two communications submitted by Plaintiffs is abusive in that it "threaten[s] the proper functioning of the litigation." The Court finds that the December 7, 2008, e-mail to Ms. Zeik, set forth above, does not. With respect to the communication, the Court agrees with Jeld–Wen that it is not misleading or coercive. Although the e-mail contains the phrase "in lieu of the class action case," a closer reading of the communication as a whole, reveals that the phrase was not used as a term of art. And, although perhaps used inappropriately, the term "in lieu of," when viewed in the context of the entire e-mail, is actually meant to convey the meaning of the word "despite." In this regard, the offer conveyed to Jeld–Wen's customer was not contingent on the execution of any release with respect to the class action lawsuit. Rather, the e-mail actually conveys the exact opposite message—that despite the class action, Jeld–Wen would repair the wood framing, which the Court notes relates only to a single aspect of the customer's claim. For these reasons, the Court finds that the December 7, 2008, e-mail does not offend the principles of the class action lawsuit or Federal Rule 23.

█ On the other hand, the October 15, 2007, letter requires the Court to make a different determination. Although the Court recognizes the context in which Jeld–Wen sent the letter, and does not find that Jeld–Wen intended to mislead putative class members or press them to opt out of the class action litigation, Jeld–Wen's intent is not conclusive of the Court's determination. Indeed, although the Court does not find that Jeld–Wen intended to interfere with the class action through its communication or for its conduct to be abusive, the Court, nonetheless, recognizes that, as a practical matter, the communication may, in fact, have the effect of interfering with the integrity of the class action. The October 15, 2007, letter at issue informs the customer that the glass in her home may have been manufactured with defective resin which may affect the ability of the glass to perform as intended. It further warns that "until such time as the laminated glass is replaced, extreme caution and prudence should be exercised if severe storm conditions arise." Jeld–Wen also conveys information that the class action has been filed regarding the defective resin and that the class allegations may include the customer as a member of the class. Finally, the letter states that "given that your home may now be involved in the *Jones* litigation, Jeld–Wen must postpone any further work with respect to replacement of the laminated glass in your home."

Plaintiffs argue that the letter is misleading in that it may cause a putative class member to believe that the class action is preventing the needed repairs. According to Plaintiffs, Jeld–Wen warns of the extreme caution that must be taken with respect to the defective glass, but then effectively blames the pending class action for being the reason why proper replacement and repair of the defective glass cannot take place. Plaintiffs contend that this mixed message implies a more significant message that, if a customer opts out of the class action, repairs on his or her Jeld–Wen products can move forward in a timely fashion. Additionally, Plaintiffs assert that the contents of the letter undermine cooperation with or confidence in class counsel. As evidence of this persuasive effect, Plaintiffs point to what they deem an exceedingly large number of motions for exclusion from the class action.

Jeld–Wen refutes Plaintiffs' arguments by stressing that it would be irresponsible for it not to warn customers of the defective nature of the glass. According to Jeld–Wen, it in-

cluded the cautionary language to allow its customers to make alternative arrangements if a hurricane or other severe storm conditions arise. Jeld–Wen denies the inclusion of the paragraph as a scare tactic to coerce its customers to opt out of the class. Additionally, Jeld–Wen asserts that the last paragraph of the letter was written in light of the "Catch-22" situation that it found itself in. Jeld–Wen characterizes the correspondence as providing information to customers that they might be members of a putative class action and that Jeld–Wen was postponing any further repairs ˙ on customers' claims. This relay of information, in Jeld–Wen's opinion, does not mischaracterize the litigation and does not coerce putative class members. Indeed, as Jeld–Wen emphasizes and the litigation history reflects, the repair program had been in place well before the class action was filed. Moreover, Jeld–Wen stresses that it has the right to settle claims with their customers. Finally, during the hearing, Jeld–Wen noted that all of the motions to opt out of the class action were filed by attorneys, and that counsel for Plaintiffs did not file any opposition to those motions. Hence, Plaintiffs should not be able to raise an argument regarding the number of parties who have opted out, where those motions were made knowingly, through counsel, and where Plaintiffs did not object to the motions.[5]

◼ The Court agrees with Jeld–Wen, in part, and recognizes that a defendant has a right to communicate settlement offers directly to putative class members. *Cox,* 214 F.R.D. at 699; *Bublitz v. E.I. duPont de Nemours and Co.,* 196 F.R.D. 545, 548 (S.D.Iowa 2000). However, a defendant may not abuse that right. *Id.* (citing Manual for Complex Litigation, Third § 30.24 at 233 (1995)) ("Defendants ordinarily are not precluded from communications with putative class members, including discussions of settlement offers with individual class members before certification, but may not give false or misleading information or attempt to influence class members in making their decision whether to remain in the class.") (citations

omitted). Cases in which courts have conditioned the transmission of settlement offers involve "class members in an inherently coercive dependent relationship with the defendant and/or settlement offers for less than that sought in the lawsuit." *Cox,* 214 F.R.D. at 699 (citing *Bublitz,* 196 F.R.D. at 550; *Freeman v. Celebrity Cruises, Inc.,* 1994 WL 689809 at *4–6 (S.D.N.Y.1994), *modified on other grounds,* 1995 WL 4139 (S.D.N.Y. 1995)).

Here, the relationship between Jeld–Wen and its customers, as well as the attending circumstances, appear to create a potentially coercive relationship or situation. Jeld–Wen, on the one hand has informed it customers of the defective nature of the glass and has instructed its customers to use "extreme caution" if storm conditions arise. On the other hand, Jeld–Wen has informed the customer that due to the fact that the customer's home may be involved in the class action litigation, Jeld–Wen must postpone any future repairs or replacement of the glass. The Court finds that a reasonable person reading the letter might well interpret it as conveying a potentially dangerous situation, but that the entity that could remedy the situation, will not do so because of the customer's possible involvement with the class action.

The fundamental problem with the October 15, 2007, letter rests in the message conveyed in the last paragraph. The language of that paragraph, when read from the standpoint of a neutral third person, links the class action lawsuit with a negative consequence— the withholding of necessary repairs. The Court recognizes that Jeld–Wen has been communicating with its customers for years regarding its repair and replacement program and that those communications began well before the class action lawsuit was filed. Hence, the Court does not find any nefarious motive for issuing the letter in question. And, in the context of the ancestry of this case, the undersigned understands that Jeld–Wen must make business decisions as a result of the litigation. However, as noted

---

5. The Court notes, however, that subsequent to the hearing on Plaintiffs' Motion for Court Supervision, Plaintiffs have filed an Objection to

Request for Exclusion in relation to putative class members Carlos and Beatrice Gonzalez's request to be excluded from the putative class.

previously, Jeld–Wen's intent does not drive the Court's determination of whether the situation requires intervention. Instead, it is the overall potential effect that the letter has on the integrity of the class action lawsuit.

The Court finds that the communication threatens the proper functioning of the litigation, as it has a tendency to suggest to the reader that needed repairs will be made only if the customer opts out of the class action. Any such suggestion, regardless of Jeld–Wen's intent in writing the letter, has the potential to have a misleading and coercive effect on putative class members. For both of these reasons, the Court finds the October 15, 2007, communication to be violative of the principles of Federal Rule 23. *See Cox,* 214 F.R.D. at 698. In weighing the need for a limitation of and the potential interference with the First Amendment rights of Jeld–Wen, the Court has fashioned a procedure which is the least restrictive means to protect both parties' rights.

### D. *Procedure for Communication by Jeld–Wen to Putative Class Members*

By instituting the following guidelines, the Court can adequately address the concerns of the Plaintiffs without infringing on Jeld–Wen's First Amendment rights:

(1) Any communication between Jeld–Wen and the putative class members relating in any way to (a) the merits, status, or effect of the class action, (b) a class members' participation in the action, or (c) settlement or other resolution of claims and issues presented in this action must be **in writing and copied to the other parties within 24 hours from when it is made.**[6]

(2) If it is not clear from the writing to whom the communication is made, Jeld–Wen shall disclose the identity of all intended recipients.

(3) Jeld–Wen shall provide ten (10) days for a putative class member to respond to any settlement offers. *See Bublitz,* 196 F.R.D. at 549. *See also In re Potash Antitrust Litigation,* 896 F.Supp. 916 (D.Minn. 1995) (directing defendants who intend to communicate with putative class members on the merits of the litigation to provide a copy of the writing to the Court and to the plaintiffs' class counsel).

(4) Settlement offers to putative class members must advise of the class action lawsuit. In this regard, the Court acknowledges Jeld–Wen's ability to send communications to putative class members relating to settlement as long as such communications provide notice to the putative class members of their right to be included in the class action. *See Freeman v. Celebrity Cruises, Inc.,* 1994 WL 689809 at *5 (S.D.N.Y.1994) (emphasizing that putative class members should be "afforded the right to settle their claims and be relieved of the burden of ongoing litigation.").[7] Furthermore, Jeld–Wen may make offers to settle the case for less than the full amount claimed, provided that Jeld–Wen fully discloses the relief sought in the class action.

In implementing these guidelines, the Court does not seek to regulate the content of Jeld–Wen's communications with putative class members. The guidelines set forth herein, however, are necessary to protect the putative class members' right to a fair trial, the policies behind Federal Rule 23, and the First Amendment rights of Jeld–Wen.

The parties are reminded of their obligations under *Gulf Oil* and its progeny. In that regard, coercive and misleading statements to putative class members are prohibited. Likewise, Jeld–Wen may not issue communications to the putative class that have the effect of portraying Plaintiffs' counsel in a poor light. The Court, however, reiterates that it is permissible for Jeld–Wen to make settlement offers to the putative class under the guidelines set forth above.

---

**6.** Plaintiffs do not have a right to participate directly in the presentation or terms of a settlement proposal by Jeld–Wen. However, by requiring Jeld–Wen to communicate with the putative class members in writing and provide a copy of that communication to Plaintiffs, Plaintiffs' counsel will be in a position to analyze the ap-

propriateness of whatever communication is made by Jeld–Wen.

**7.** As *Freeman* states, "[t]here is no legitimate reason to force [class members] to wait for a resolution of the class action." *Freeman,* 1994 WL 689809 at *5.

The Court also finds that because of the unique posture of this case, along with the pending *Jeld–Wen II* action, Third–Party Defendants Glasslam and Reichhold will not be limited in their communications to putative class members provided that they adhere to the guidelines set forth in *Gulf Oil* and its progeny. Indeed, since Plaintiffs have not made any evidentiary showing that Glasslam or Reichhold have abused or threatened the proper functioning of the litigation, no restraint on these Third–Party Defendants is appropriate. Significantly, due to the pending *Jeld–Wen II* case, Third–Party Defendants must be permitted to conduct discovery with respect to Jeld–Wen's customers' homes in order to defend themselves properly in that action. During the hearing on this matter, counsel for Plaintiffs conceded that it is necessary for the Third–Party Defendants to contact the putative class members in furtherance of discovery in the *Jeld–Wen II* action.

### E. *Discovery*

Finally, with respect to Plaintiffs' requested discovery relating to communications previously made by Jeld–Wen to the putative class, the Court finds some of the requests to be overly broad and unwarranted under the circumstances. However, the Court will allow limited discovery with respect to those individuals that have opted out of the class action or have pending motions to be excluded from the class action suit. Specifically, Jeld–Wen is directed to produce to Plaintiffs' counsel communications that were previously sent to individuals that have filed motions to be excluded from the class action. Production of these communications will allow Plaintiffs' counsel to analyze whether the communications appear to interfere with the integrity of the class action. Jeld–Wen must provide these communications to Plaintiffs' counsel by no later than **May 19, 2008.**

### CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Court Supervision of Communications Between Defendant Jeld–Wen and the Putative Class [D.E. 132] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

**DONE and ORDERED.**