# TORY ET AL. *v.* COCHRAN

No. 03–1488. Argued March 22, 2005—Decided May 31, 2005

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, SOUTER, and GINSBURG, JJ., joined. THOMAS, J., filed a dissenting opinion, in which SCALIA, J., joined, *post*, p. 739.

*Erwin Chemerinsky* argued the cause for petitioners. With him on the briefs were *Gary L. Bostwick* and *Jean-Paul Jassy.*

*Jonathan B. Cole* argued the cause for respondent. With him on the brief were *Karen K. Coffin* and *Susan S. Baker.**

JUSTICE BREYER delivered the opinion of the Court.

Johnnie Cochran brought a state-law defamation action against petitioner Ulysses Tory. The state trial court determined that Tory (with the help of petitioner Ruth Craft and others) had engaged in unlawful defamatory activity. It found, for example, that Tory, while claiming falsely that Cochran owed him money, had complained to the local bar association, had written Cochran threatening letters demanding $10 million, had picketed Cochran's office holding up signs containing various insults and obscenities; and, with a group of associates, had pursued Cochran while chanting similar threats and insults. App. 38, 40–41. The court concluded that Tory's claim that Cochran owed him money was without foundation, that Tory engaged in a continuous pattern of libelous and slanderous activity, and that Tory had

---

*Briefs of *amici curiae* urging reversal were filed for the American Federation of Labor and Congress of Industrial Organizations by *Jonathan P. Hiatt, James B. Coppess,* and *Laurence Gold;* for the Thomas Jefferson Center for the Protection of Free Expression by *Robert M. O'Neil* and *J. Joshua Wheeler;* for Alfred L. Brophy et al. by *Michael I. Meyerson, pro se;* and for Michelangelo Delfino et al. by *Jon B. Eisenberg* and *Jeremy B. Rosen.*

*Kelli L. Sager, Jeffrey L. Fisher, Jerry S. Birenz, Richard A. Bernstein, Jonathan Bloom, Harold W. Fuson, Jr., Thomas B. Kelley, Steven D. Zansberg, Eve Burton, Jonathan R. Donnellan, Karlene Goller, George Freeman, Lucy A. Dalglish,* and *Eric N. Lieberman* filed a brief for Los Angeles Times Communications LLC et al. as *amici curiae.*

used false and defamatory speech to "coerce" Cochran into paying "amounts of money to which Tory was not entitled" as a "tribute" or a "premium" for "desisting" from this libelous and slanderous activity. *Id.*, at 39, 42–43.

After noting that Tory had indicated that he would continue to engage in this activity in the absence of a court order, the Superior Court issued a permanent injunction. The injunction, among other things, prohibited Tory, Craft, and their "agents" or "representatives" from "picketing," from "displaying signs, placards or other written or printed material," and from "orally uttering statements" about Johnnie L. Cochran, Jr., and about Cochran's law firm in "any public forum." *Id.*, at 34.

Tory and Craft appealed. The California Court of Appeal affirmed. Tory and Craft then filed a petition for a writ of certiorari, raising the following question:

> "Whether a permanent injunction as a remedy in a defamation action, preventing all future speech about an admitted public figure, violates the First Amendment." Pet. for Cert. i.

After oral argument, Cochran's counsel informed the Court of Johnnie Cochran's recent death. Counsel also moved to substitute Johnnie Cochran's widow, Sylvia Dale Mason Cochran, as respondent, and suggested that we dismiss the case as moot. Tory and Craft filed a response agreeing to the substitution of Ms. Cochran. But they denied that the case was moot.

We agree with Tory and Craft that the case is not moot. Despite Johnnie Cochran's death, the injunction remains in effect. Nothing in its language says to the contrary. Cochran's counsel tells us that California law does not recognize a "cause of action for an injury to the memory of a deceased person's reputation," see *Kelly* v. *Johnson Pub. Co.*, 160 Cal. App. 2d 718, 325 P. 2d 659 (1958), which circumstance, counsel believes, "moots" a *"portion"* of the injunc-

tion (the portion "personal to Cochran"). Respondent's Suggestion of Death, etc., 4 (emphasis added). But counsel adds that "[t]he [i]njunction continues to be necessary, valid and enforceable." *Id.*, at 9. The parties have not identified, nor have we found, any source of California law that says the injunction here *automatically* becomes invalid upon Cochran's death, not even the portion personal to Cochran. Counsel also points to the "value of" Cochran's "law practice" and adds that his widow has an interest in enforcing the injunction. *Id.*, at 11–12. And, as we understand California law, a person cannot definitively know whether an injunction is legally void until a court has ruled that it is. See *Mason* v. *United States Fidelity & Guaranty Co.*, 60 Cal. App. 2d 587, 591, 141 P. 2d 475, 477–478 (1943) ("[W]here the party served believes" a court order "invalid he should take the proper steps to have it dissolved"); *People* v. *Gonzalez*, 12 Cal. 4th 804, 818, 910 P. 2d 1366, 1375 (1996) ("[A] person subject to a court's injunction may elect whether to challenge the constitutional validity of the injunction when it is issued, or to reserve that claim until a violation of the injunction is charged as a contempt of court"). Given the uncertainty of California law, we take it as a given that the injunction here continues significantly to restrain petitioners' speech, presenting an ongoing federal controversy. See, *e. g., Dombrowski* v. *Pfister*, 380 U. S. 479, 486–487 (1965); *NAACP* v. *Button*, 371 U. S. 415, 432–433 (1963). Consequently, we need not, and we do not, dismiss this case as moot. Cf. *Firefighters* v. *Stotts*, 467 U. S. 561, 569 (1984) (case not moot in part because it appears from "terms" of the injunction that it is "still in force" and "unless set aside must be complied with").

At the same time, Johnnie Cochran's death makes it unnecessary, indeed unwarranted, for us to explore petitioners' basic claims, namely, (1) that the First Amendment forbids the issuance of a permanent injunction in a defamation case, at least when the plaintiff is a public figure, and (2) that

the injunction (considered prior to Cochran's death) was not properly tailored and consequently violated the First Amendment. See Brief for Petitioners ii, iii. Rather, we need only point out that the injunction, as written, has now lost its underlying rationale. Since picketing Cochran and his law offices while engaging in injunction-forbidden speech could no longer achieve the objectives that the trial court had in mind (*i. e.*, coercing Cochran to pay a "tribute" for desisting in this activity), the grounds for the injunction are much diminished, if they have not disappeared altogether. Consequently the injunction, as written, now amounts to an overly broad prior restraint upon speech, lacking plausible justification. See *Nebraska Press Assn.* v. *Stuart*, 427 U. S. 539, 559 (1976) ("[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights"); *Pittsburgh Press Co.* v. *Pittsburgh Comm'n on Human Relations*, 413 U. S. 376, 390 (1973) (a prior restraint should not "swee[p]" any "more broadly than necessary"). As such, the Constitution forbids it. See *Carroll* v. *President and Comm'rs of Princess Anne*, 393 U. S. 175, 183–184 (1968) (An "order" issued in "the area of First Amendment rights" must be "precis[e]" and narrowly "tailored" to achieve the "pin-pointed objective" of the "needs of the case"); see also *Board of Airport Comm'rs of Los Angeles* v. *Jews for Jesus, Inc.*, 482 U. S. 569, 575, 577 (1987) (regulation prohibiting "all 'First Amendment activities' " substantially overbroad).

We consequently grant the motion to substitute Sylvia Dale Mason Cochran for Johnnie Cochran as respondent. We vacate the judgment of the California Court of Appeal, and we remand the case for proceedings not inconsistent with this opinion. If, as the Cochran supplemental brief suggests, injunctive relief may still be warranted, any appropriate party remains free to ask for such relief. We express no view on the constitutional validity of any such new re-

lief, tailored to these changed circumstances, should it be entered.

*It is so ordered.*

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

I would dismiss the writ of certiorari as improvidently granted. We granted the writ, as the Court notes, to decide

> "[w]hether a permanent injunction as a remedy in a defamation action, preventing all future speech about an admitted public figure, violates the First Amendment." Pet. for Cert. i; *ante,* at 736.

Whether or not Johnnie Cochran's death moots this case, it certainly renders the case an inappropriate vehicle for resolving the question presented. The Court recognizes this, *ante,* at 737–738, but nevertheless vacates the judgment below, *ante,* at 738. It does so only after deciding, as it must to exercise jurisdiction, that in light of the uncertainty in California law, the case is not moot. *Ante,* at 736–737; *ASARCO Inc.* v. *Kadish,* 490 U. S. 605, 621, n. 1 (1989) (when a case coming from a state court becomes moot, this Court "lack[s] jurisdiction and thus also the power to disturb the state court's judgment"); see also *City News & Novelty, Inc.* v. *Waukesha,* 531 U. S. 278, 283–284 (2001).

In deciding the threshold mootness issue, a complicated problem in its own right, the Court strains to reach the validity of the injunction after Cochran's death. Whether the injunction remains valid in these changed circumstances is neither the reason we took this case nor an important question, but merely a matter of case-specific error correction. Petitioners remain free to seek relief on both constitutional and state-law grounds in the California courts. And, if the injunction is invalid, they need not obey it: California does not recognize the "collateral bar" rule, and thus permits collateral challenges to injunctions in contempt proceedings.

*People* v. *Gonzalez,* 12 Cal. 4th 804, 818, 910 P. 2d 1366, 1375 (1996) (a person subject to an injunction may challenge "the constitutional validity of the injunction when it is issued, or . . . reserve that claim until a violation of the injunction is charged as a contempt of court"). The California courts can resolve the matter and, given the new state of affairs, might very well adjudge the case moot or the injunction invalid on state-law grounds rather than the constitutional grounds the Court rushes to embrace. As a prudential matter, the better course is to avoid passing unnecessarily on the constitutional question. See *Ashwander* v. *TVA,* 297 U. S. 288, 345–348 (1936) (Brandeis, J., concurring).

The Court purports to save petitioners the uncertainty of possible enforcement of the injunction, and thereby to prevent any chill on their First Amendment rights, by vacating the judgment below. But what the Court gives with the left hand it takes with the right, for it only invites further litigation by pronouncing that "injunctive relief may still be warranted," conceding that "any appropriate party remains free to ask for such relief," and "express[ing] no view on the constitutional validity of any such new relief." *Ante,* at 738–739. What the Court means by "any appropriate party" is unclear. Perhaps the Court means Sylvia Dale Mason Cochran, Cochran's widow, who has taken his place in this suit. Or perhaps it means the Cochran firm, which has never been a party to this case, but may now (if "appropriate") intervene and attempt to enjoin the defamation of a now-deceased third party. The Court's decision invites the doubts it seeks to avoid. Its decision is unnecessary and potentially self-defeating. The more prudent course is to dismiss the writ as improvidently granted. I respectfully dissent.