SYKES, Circuit Judge,
concurring.
The only serious issue remaining in this long-running case is the propriety of the permanent injunction entered by the district court as an additional form of relief on the jury’s verdict, which found the defendants liable for defamation and awarded damages. The injunction is deeply flawed for all the reasons described by my colleagues: (1) the jury was not asked to identify which of nine possible statements were false and defamatory, so we have no findings to support the specificity requirement for a proper injunction, see Fed. R.Civ.P. 65(d)(1); (2) the enjoined statements do not even correspond to the statements the plaintiffs claimed were defamatory; and (3) the injunction is hopelessly vague and overbroad. It plainly cannot stand.
Unlike my colleagues, however, I would not give the judge an opportunity to correct these errors and try to fashion a narrower injunction on remand. The jury’s verdict is too general to support injunctive relief. As the proponents of this remedy, the plaintiffs had the responsibility to propose a special-verdict form that asked the jury to make “statement specific” defamation findings. They did not do so. Accordingly, we have no idea which specific statements the jury found to be false and defamatory; we have only the equivalent of a general verdict that the defendants are liable for defamation. That kind of verdict doesn’t contain the necessary factual findings to süpport the issuance of a permanent injunction.
It’s true, as my colleagues note, that the issuance of an injunction is the responsibility of the trial judge, not the jury. See Majority Op. at 462-63. Assuming for argument’s sake that the trial judge has the authority to make the missing factual findings himself, I wouldn’t allow that opportunity now. The plaintiffs never asked the judge to address this problem either before or after the jury returned its verdict. Nor have they asked us for a remand to allow the judge to fill the gaps. I see no reason to order this remedy sua sponte.
*464 More fundamentally, the question whether an injunction is permissible at all in this context is a sensitive and difficult matter of First Amendment law. A court order permanently enjoining future speech is a prior restraint and as such is presumptively unconstitutional. Any prior restraint comes to us “bearing a heavy presumption against its constitutional validity,” Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), and “permanent injunctions— i.e., court orders that actually forbid speech activities — are classic examples of prior restraints” because they impose a “true restraint on future speech,” Alexander v. United States, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993). As the Supreme Court explained in its seminal case condemning prior restraints, an injunction against future speech — making any publication of the suppressed speech punishable as contempt — is “the essence of censorship.” Near v. Minnesota ex rel. Olson, 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).
Consistent with this bedrock free-speech principle, the traditional rule in defamation law is that “equity does not enjoin a libel or slander[;] ... the only remedy for defamation is an action for damages.” e360 Insight v. The Spamhaus Project, 500 F.3d 594, 606 (7th Cir.2007) (quotation marks omitted); see also Metro. Opera Ass’n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int’l Union, 239 F.3d 172, 177 (2d Cir.2001); Kramer v. Thompson, 947 F.2d 666, 677 (3d Cir.1991); Comm. for Creative Non-Violence v. Pierce, 814 F.2d 663, 672 (D.C.Cir.1987). This rule “has enjoyed nearly two centuries of widespread acceptance at common law.” Kramer, 947 F.2d at 677; see also Erwin Chemerinsky, Injunctions in Defamation Cases, 57 Syracuse L.Rev. 157, 167-68 (2007); Michael I. Myerson, The Neglected History of the Prior Restraint Doctrine: Rediscovering the Link Between the First Amendment and the Separation of Powers, 34 Ind. L.Rev. 295, 308-22 (2001).
The Supreme Court has not yet directly addressed whether injunctive relief is a constitutionally permissible remedy for defamation, but the general equitable rule accords with the Court’s prior-restraint jurisprudence dating back to Near, which invalidated a Minnesota statute that permitted the issuance of temporary and permanent injunctions against persons and organizations engaged in the publication of defamatory newspapers, magazines, or other periodicals. 283 U.S. at 702, 723, 51 S.Ct. 625; see id. at 712, 51 S.Ct. 625 (“[Sjuppression is accomplished by enjoining publication, and that restraint is the object and effect of the statute.”).
An emerging modern trend, however, acknowledges the general rule but allows for the possibility of narrowly tailored permanent injunctive relief as a remedy for defamation as long as the injunction prohibits only the repetition of the specific statements found at trial to be false and defamatory. See Hill v. Petrotech Res. Corp., 325 S.W.3d 302, 308-09 (Ky.2010); Balboa Island Vill. Inn, Inc. v. Lemen, 40 Cal.4th 1141, 57 Cal.Rptr.3d 320, 156 P.3d 339, 347-49 (2007); Sid Dillon Chevrolet v. Sullivan, 251 Neb. 722, 559 N.W.2d 740, 746-47 (1997); Advanced Training Sys., Inc. v. Caswell Equip. Co., 352 N.W.2d 1, 11 (Minn.1984); Retail Credit Co. v. Russell, 234 Ga. 765, 218 S.E.2d 54, 62-63 (1975); O’Brien v. Univ. Cmty. Tenants Union, Inc., 42 Ohio St.2d 242, 327 N.E.2d 753, 755 (1975); see also Lothschuetz v. Carpenter, 898 F.2d 1200, 1208-09 (6th Cir.1990) (Wellford, J., concurring in part and dissenting in part); id. (Hull, J., joining Judge Wellford’s opinion on this question). These cases appear to draw general lessons from the Supreme Court’s decisions in Pittsburgh Press Co. v. Pittsburgh *465 Commission on Human Relations, 413 U.S. 376, 389-91, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1978), and Kingsley Books, Inc. v. Brown, 354 U.S. 436, 441~45, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). I’m not sure I agree with this modem trend.
Pittsburgh Press upheld an order prohibiting a newspaper from organizing its classified advertising section in a way that allowed employment ads to discriminate on the basis of sex — for example, by having separate columns for “Male Help Wanted” and “Female Help Wanted.” 413 U.S. at 379-80, 93 S.Ct. 2553. In Kingsley Books the Court upheld an injunction prohibiting the distribution of a particular booklet found to be obscene after a full trial. 354 U.S. at 445, 77 S.Ct. 1325.
Pittsburgh Press and Kingsley Books arose in distinctive settings that make it difficult to map their holdings onto defamation law. Perhaps most notably, Pittsburgh Press did not address an injunction at all, but instead involved a regulatory order issued by a municipal commission that lacked the power to punish by contempt. 413 U.S. at 390 n. 14, 93 S.Ct. 2553. And the type of speech at issue in Kingsley — an obscene booklet — suggests to me that some caution is in order before trying to extrapolate a general rule. Defamation is materially different from obscenity. There’s a meaningful distinction between enjoining the distribution of a particular pamphlet once it’s been found to be obscene and enjoining a person in perpetuity from uttering particular words and phrases. Defamation by its nature is highly contextual. A statement that is defamatory in one circumstance, time, or place might not be defamatory in another circumstance, time, or place. A permanent injunction as a remedy for defamation does not account for constantly changing contextual factors that affect whether the speech is punishable or protected. If factual circumstances change in a way that affects the defamation calculus, the person enjoined must risk contempt or seek the court’s permission to speak. As the Court said emphatically in Near, “[t]his is the essence of censorship.” 283 U.S. at 713, 51 S.Ct. 625.
The emerging trend, moreover, is far from an inexorable movement toward a new doctrine. In a thoughtful opinion, the Third Circuit predicted that the Pennsylvania Supreme Court would not relax the general rule that equity will not enjoin a libel. Kramer, 947 F.2d at 677-79. Similarly, the Texas Supreme Court has recently held, also in a thorough and thoughtful opinion, that a permanent injunction as a remedy in a defamation case is an impermissible prior restraint on speech. See Kinney v. Barnes, 443 S.W.3d 87, 94-99 (Tex.2014). Kinney was decided as a matter of state constitutional law, but the court noted that the state constitution’s free-speech guarantee is governed by First Amendment standards, at least on this particular question. Id. at 91-92 (“We know of nothing to suggest that injunctions restricting speech should be judged by a different standard under the state constitution than the First Amendment.”) (quotation marks omitted).
Finally, in 2004 the Supreme Court granted certiorari in Tory v. Cochran to decide whether a permanent injunction is a constitutionally permissible remedy in a defamation case, “at least when the plaintiff is a public figure.” 544 U.S. 734, 736, 737, 125 S.Ct. 2108, 161 L.Ed.2d 1042 (2005). But the Court never reached the merits. The plaintiff died after the case was orally argued, so the Court summarily vacated the injunction, which had “lost its underlying rationale.” Id. at 737-38, 125 S.Ct. 2108.
In short, the question whether the First Amendment forbids the issuance of a permanent injunction in a defamation case is an important one and far from settled. By *466 offering the district court an opportunity to craft a new injunction, my colleagues imply that such a remedy is constitutionally permissible — indeed appropriate in ■cases of judgment-proof defamers who might not be deterred by a damages award. See Majority Op. at 461-62. I cannot join this part of the court’s opinion. At the very least, it wrongly implies that a core liberty secured by the First Amendment — the right to be free from prior restraints on speech — does not protect people who lack the means to pay a judgment.
For my part, I see no need to decide the constitutional question now. The injunction is fatally flawed for the other reasons identified by my colleagues, and as explained above, I would not allow the plaintiffs and the court to try again.
Accordingly, I join the court’s opinion affirming on all issues except the injunction. I also join the decision to' vacate the injunction. But my agreement stops there. I would remand with narrower instructions: The district court should simply issue an amended judgment without the flawed injunction.