RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0116p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

THOMAS A. FOX, and all those similarly situated,
　　　　　　　　　　　　　　*Plaintiff-Appellee*,

　　　*v.*

SAGINAW COUNTY, MICHIGAN, et al.,
　　　　　　　　　　　　　　*Defendants-Appellees*,

ASSET RECOVERY, INC.,
　　　　　　　　　　*Interested Party-Appellant*.

No. 21-1653

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:19-cv-11887—Thomas L. Ludington, District Judge.

Decided and Filed:  June 1, 2022

Before:  GIBBONS, McKEAGUE, and THAPAR, Circuit Judges.

─────────────────

### COUNSEL

**ON BRIEF:**  Todd Rhys Mendel, Eugene Driker, Melonie L.M. Stothers, John Sheets, BARRIS, SOTT, DENN & DRIKER, PLLC, Detroit, Michigan, for Appellant.  E. Powell Miller, Sharon S. Almonrode, Christopher D. Kaye, THE MILLER LAW FIRM, P.C., Rochester, Michigan, Matthew E. Gronda, St. Charles, Michigan, for Appellee Thomas Fox.  Matthew T. Nelson, WARNER NORCROSS + JUDD LLP, Grand Rapids, Michigan, Douglas J. Curlew, CUMMINGS MCCLOREY DAVIS & ACHO, Grand Rapids, Michigan, Theodore W. Seitz, Kyle M. Asher, DYKEMA GOSSETT PLLC, Lansing, Michigan, Charles A. Lawler, CLARK HILL, Lansing, Michigan, for County Appellees.

———————————

**OPINION**

———————————

THAPAR, Circuit Judge. Thomas Fox and others like him failed to pay some of their property taxes. So the counties they owed foreclosed on their property and sold it. But the counties did not just keep the money owed; they kept all of the sale proceeds—sometimes tens of thousands of dollars beyond the taxes due. None of it went back to the property owners. Seeking to receive the rest of their money back, Fox filed this class action against the counties.

After learning about the property owners' plight, Asset Recovery Inc. contacted potential plaintiffs about pursuing relief on their behalf. Fox believed that ARI was improperly soliciting class members, so he asked the district court to order ARI to (1) stop contacting class members and (2) allow class members to back out of their agreements with ARI. The district court granted Fox's motion. ARI appeals that order. We affirm in part, vacate in part, and remand.

I.

In 2020 (while Fox's class action was pending), the Michigan Supreme Court held that the counties' practice violated the Michigan Constitution's Takings Clause. *See Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434 (Mich. 2020). And not long after, the Michigan legislature began crafting a statutory process for recovering the proceeds.

With avenues for recovery taking shape, ARI decided it wanted to be involved. So it looked for people who could bring these claims. ARI contacted people who might have claims by phone, email, and letter. The company told them about the services ARI offered, assured them that it would handle the logistics of the claims, and encouraged them to appoint ARI as their fiduciary and enter a contingency-fee arrangement. ARI got ten claimants on board within a few months. It then hired a law firm to represent the claimants.

Soon after, the district court certified Fox's class. It reasoned that the class action "offers greater recovery for a larger group of claimants" than any other option and is thus the best way to handle the class's claims. R. 124, Pg. ID 2302.

ARI disagreed with the district court's view.  It thought it could achieve the best and most efficient results for its clients through individualized claims—not the class action.  So it instructed the law firm it hired to opt out ARI-represented claimants—including twenty-two more it had engaged since the district court certified the class.  It directed the firm to instead pursue individual relief on their behalf.

Fox objected to the opt-outs.  He asked the district court to keep ARI from communicating with class members, to rescind or invalidate ARI's contracts with class members, and to disqualify ARI from representing claimants in Michigan.

The district court granted Fox's motion in part.  It enjoined ARI from communicating with class members about the claims without court approval and directed Fox and the counties to submit a curative notice, which would be sent to all class members.  The court ordered that the curative notice tell class members that they could rescind any agreement with ARI or the law firm that ARI retained.  So the district court's order gave all thirty-two of ARI's clients who were class members a choice:  Stay with ARI or pursue relief as part of the class instead.  Under the order, ARI can communicate with any clients who choose to stay only after the class action's opt-out period has closed.

ARI appeals that order.

## II.

Before addressing the merits, we must ensure we have jurisdiction over this appeal.  *See Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017).  We do under the collateral-order doctrine.[1]

The collateral-order doctrine permits interlocutory appeals of orders that (1) are "conclusive" on the questions they decide, (2) resolve "important questions separate from the

---

[1]The counties contest our subject-matter jurisdiction over all counties other than Gratiot County based on standing.  But that issue is before this court in a separate appeal, and we will not entertain an attempt to resolve that question here instead.  Even if we decide that the plaintiffs lack standing over the remaining counties, the district court's order is self-limiting; it applies only to ARI's communications with *class members*.  In other words, if the class is later limited to include claimants from only some counties, the district court's order will be correspondingly limited to those claimants.  For these reasons, we need not reach the counties' subject-matter-jurisdiction argument here.

merits," and (3) are "effectively unreviewable if not addressed through an interlocutory appeal." *Swanson v. DeSantis*, 606 F.3d 829, 832–33 (6th Cir. 2010) (cleaned up).  All three are true of the district court's order, and we can consider this appeal.

*First*, the order is "conclusive."  It bars ARI from communicating with class members and allows class members to back out of their agreements with ARI.  Further litigation will not change the nature of the order or the parties' relevant rights and obligations.

*Second*, the order resolves important questions separate from the merits.  The order presents important class-integrity and First Amendment issues.  *See In re Sch. Asbestos Litig.*, 842 F.2d 671, 678 (3d Cir. 1988).  And it is unrelated to the merits; it deals with the separate issue of a nonparty's interactions with class members.  In other words, the order does not affect the "final disposition of the merits of [this] case."  *Cohen v. Ben. Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

*Third*, ARI could suffer irreparable harm—by losing its claimed First Amendment freedom to communicate with class members—if we wait to review this order until final judgment.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").  And orders that cause irreparable harm are effectively unreviewable without an interlocutory appeal.  *See Mathews v. Eldridge*, 424 U.S. 319, 331 n.11 (1976).

Fox disagrees.  He says the district court had not yet disposed of the issues covered by the order when ARI appealed because it still had to approve the language of the curative notice.  But ministerial supervision of the curative-notice language does not make the district court's order any less final.  *Cf. Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 424 (6th Cir. 1998) (noting that the Supreme Court encourages a practical approach when applying the collateral-order doctrine); *Martin v. Brown*, 63 F.3d 1252, 1260 (3d Cir. 1995) (holding that a sanctions order was final for purposes of the collateral-order doctrine even though the district court hadn't set the amount of sanctions); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1118 (7th Cir. 1979) (holding that the district court's continued supervisory role didn't undermine finality).  Thus, we have jurisdiction over ARI's appeal.

III.

Next, we move to the merits and review the district court's order for an abuse of discretion.  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 103 (1981).  A district court abuses its discretion if its order is supported by "neither factual findings nor legal arguments."  *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 929 (6th Cir. 2019) (quoting *Gulf Oil*, 452 U.S. at 102).

The parties agree that a court can control abusive communications of those—parties and nonparties alike—who threaten or interfere with a class action.  But they contest whether the district court went beyond that authority here.

We divide our analysis into two parts.  First, we examine whether ARI's communications justified intervention.  Then we consider the scope of the district court's order.

A.

Federal Rule of Civil Procedure 23 grants federal courts "broad authority" to manage class-action litigation.  *See Gulf Oil*, 452 U.S. at 100; *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 353 (6th Cir. 2009) (citing Fed. R. Civ. P. 23(d)).  That authority includes the power to restrict "abus[ive]" communications directed at class members.  *Gulf Oil*, 452 U.S. at 101–02.  But before exercising that power, a court must weigh the need to protect class members against the restriction of a speaker's First Amendment rights.  *Id.*  And any resulting order must be "carefully drawn" to "limit[] speech as little as possible" and "should be based on a clear record and specific findings" showing a "likelihood of serious abuses."  *Id.* at 102, 104.

Abusive communications include anything related to the litigation that "pose[s] a serious threat to the fairness of the litigation process, the adequacy of representation, and the administration of justice generally."  *In re Sch. Asbestos Litig.*, 842 F.2d at 680.  That could be sharing misleading information, misrepresenting the nature of the class action, or coercing prospective class members to opt out of a class.  *See* 3 William B. Rubenstein, *Newberg on Class Actions* §§ 9.3, 9.10 (5th ed. Dec. 2021 update); *accord Gulf Oil*, 452 U.S. at 100 n.12; *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008).

ARI's communications were abusive for two reasons.  First, ARI distorted the facts surrounding the claims process when it contacted potential claimants.  For example, the company's solicitation letter warned that plaintiffs must "claim [the money owed to them] before time runs out," that "[t]hese funds will not be available indefinitely," and that "[m]any claims have been lost due to procrastination."  R. 184-3, Pg. ID 4927.  But as the district court pointed out, no statutory claims process even existed when ARI sent these letters, so time *could not have* run out.  Indeed, the Michigan legislature did not create the statutory process ARI says the letter was about—with its corresponding time limits—until months after ARI started sending these letters.  *See* Mich. Comp. Laws § 211.78t.  So ARI's warnings were not grounded in fact.  And they could lead potential claimants to believe that if they did not hire ARI—and quickly—they would lose their statutory claims.  That was misleading.

Second, ARI kept soliciting clients from the class even after the court granted certification and before class members received fair notice of the class action.  And then ARI told the law firm to opt these members out of the class.  Of course, "there are legitimate reasons" why class members might choose to pursue individual claims.  R. 209, Pg. ID 5801.  But ARI's communications did not facilitate that choice.  ARI instead undermined "the goal of informed consent" by engaging class members and then opting them out of the class action, all based on "a one-sided presentation of the facts, without opportunity for rebuttal."  *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985).  In other words, ARI undercut the district court's duty under Rule 23 to "present a fair recital of the subject matter of the suit and to inform all class members of their opportunity to be heard."  *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1125 (9th Cir. 1977).  It took over class members' claims without telling them that they were already represented as members of a class.

At bottom, ARI misled class members and coerced them into hiring ARI before the district court sent notice.  ARI then opted them out of the class, apparently without even telling them about the class action.[2]  This conduct was hallmark abusive communication.  *See*

---

[2]The district court noted that it was not clear whether "ARI furnished its reasoning to or consulted with any class member before instructing [the law firm] to opt out of the class."  R. 209, Pg. ID 5796.  But there is no evidence that ARI or the law firm talked to class members about their decision to opt out.  The only communication we know took place about opting out was between ARI and the law firm.

3 Rubenstein, *supra*, § 9.3; *accord Jones*, 250 F.R.D. at 561.  So ARI's communications justify the district court's intervention.  *See Gulf Oil*, 452 U.S. at 100 n.12; *In re Sch. Asbestos Litig.*, 842 F.2d at 680.

ARI disagrees with our conclusion.  Its objections fall into three buckets: (1) its communications were not misleading or abusive; (2) its solicitation did not interfere with an existing class; and (3) the district court exceeded its authority based on the timing of ARI's communications.  None of these arguments hold water.

ARI's first argument focuses on the language in its letter.  It contends that the letter was not misleading because the excess sale proceeds were, in fact, "unclaimed" and because Michigan's claims-recovery statute imposes strict time limits for recovery.  But as we have already noted, that statute did not exist when ARI first contacted claimants.  So even if the funds were properly characterized as "unclaimed," telling claimants others had lost statutory claims "due to procrastination" was not true.  *Cf. Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) (holding that communications that are "factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice").

ARI's second argument also falls short.  ARI says that it could not have interfered with a class because the class here was functionally incomplete.  Appellant Br. 27; Appellant Reply Br. 11 (citing *Faber v. Ciox Health, LLC*, 944 F.3d 593, 602–03 (6th Cir. 2019)).  There is no class to be interfered with, ARI incorrectly argues, until members are given notice and the chance to opt out.  To be sure, class members must have a chance to opt out before they are bound by a judgment.  *See Faber*, 944 F.3d at 603.  But that does not mean that claimants become class members only after the opt-out period has closed; rather, that is the nature of an opt-*out*.  Claimants are class members from certification until they choose to leave the class.  Indeed, the plain text of Rule 23 confirms it—the Rule contemplates excluding "any *member* who requests exclusion."  Fed. R. Civ. P. 23(c)(2)(B) (emphasis added).  So despite what ARI says, its efforts to solicit clients after the class was certified targeted members of a bona fide class.

ARI also asserts it did not interfere with the class because it solicited *mostly* property owners with claims under the new Michigan statute—claims it argues are not covered by the class action. But even assuming ARI is right that these claims are not covered, ARI admits to being "involved with" (and has thus necessarily talked to) some class members who hold claims outside of that statute—which everyone agrees are covered by the class action. Appellant Br. 29. So this argument does not get ARI anywhere.

The arguments in the third bucket also lack merit. ARI contends that the district court cannot restrict nonparties' communications with potential class members before a class is certified. That may be right. But the district court issued its order here *after* it certified the class. And no one contests the district court's authority to limit abusive communication with class members once it has certified a class.

ARI similarly argues that the district court lacks the authority to restrict its communications *based on* actions it took before the class was certified. But ARI continued its misleading solicitations when the district court certified the class. Indeed, it engaged twenty-two more class members after certification. And just because a party was aggressive before certification does not mean it can engage in improper contact after certification. Thus, the district court did not abuse its discretion when it acted to protect class members from ARI's post-certification communications.

B.

Next, we review the scope of the district court's order. The order (1) enjoined ARI from communicating with class members about "the recovery of surplus proceeds" without first seeking the court's permission and (2) mandated a curative notice. R. 209, Pg. ID 5804–05. The curative notice had to inform all of ARI's clients who were class members "of their right to rescind any agreement entered with [ARI]." *Id.* at 5805. Though the bulk of the order passes muster, the curative notice sweeps too broadly. The district court abused its discretion by allowing class members who hired ARI before the class was certified to rescind their agreements. We address the injunction and the curative notice in turn.

*First*, the injunction. As evidenced above, ARI is both willing and able to mislead class members. Indeed, ARI continued to engage class members after certification without informing them of the class action. And before its clients received notice of the class action, ARI (through counsel) opted them out of the class. This record of misleading and abusive communications supports the district court barring ARI from any further communications with the class. *See Gulf Oil*, 452 U.S. at 102. So we affirm that portion of the order.

ARI disagrees with our conclusion and argues that the court's order enjoined too much communication. It asserts that it should be allowed to communicate with class members as soon as they receive the curative notice. But class members should decide for themselves whether they want to opt out. And ARI has shown a tendency to mislead and unilaterally opt out class members. So the district court did not abuse its discretion by making ARI wait until the close of the opt-out period to again communicate with claimants who voluntarily choose its services over the class.

At any rate, ARI will have its answer soon enough. The class notice has been approved and is likely in the mail. ARI need only wait until the opt-out period closes to reach out to those who have stuck with it.

*Second*, the curative notice. The district court acted within its authority by letting class members who contracted with ARI after the class was certified rescind their agreements. This remedy is not extraordinary in the class-action context. *See, e.g.*, *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 922 n.11 (11th Cir. 2014) (collecting cases in which courts took similar action); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) ("giving solicited . . . clients the option of rescinding any retention agreement" induced by misleading communications). And it falls within the district court's broad authority to manage class-action litigation to protect against coercive communications and further "the administration of justice generally." *In re Sch. Asbestos Litig.*, 842 F.2d at 680; *see also Erhardt*, 629 F.2d at 846. After all, these clients were already represented—as part of a certified class—when they entered the agreements (though ARI did not tell them that).

But the district court went a step too far in allowing class members who hired ARI before the class was certified to rescind their agreements. Indeed, it abused its discretion by not explaining why *pre*-certification agreements should be abrogated. *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 929 (quoting *Gulf Oil*, 452 U.S. at 102). The district court merely noted that "[t]he record demonstrates that ARI sent abusive communications to class members, likely causing some to unwittingly abandon their position in the class." R. 209, Pg. ID 5803. To be sure, that is enough to allow clients who hired ARI after certification, when they were already (though unwittingly) represented, to abandon their agreements. But the court never explained why that rationale covers individuals who were not class members when they hired ARI.

Indeed, there is reason to think it should not. There is nothing inherently abusive about engaging clients who later end up members of a class.**[3]** In fact, it makes sense that lawyers might engage clients who could later become class members—they are people with viable legal claims. And often potential plaintiffs are not even aware of their rights. What might happen if we instead required lawyers to comb through existing class-action suits—before a class is even certified—to see if potential clients might otherwise be represented? Potential plaintiffs would fall by the wayside—especially when the scope of the class is not clear before certification. Here, there is no evidence ARI knew the class action was pending until after the district court certified the class. And without more, we will not penalize the company for engaging clients before they were class members. On this front, the district court abused its discretion.

\*          \*          \*

The district court has the authority to protect the class-action process. That is what it did here. But the court went a step too far by lumping together those who ARI had engaged pre-certification with those it engaged post-certification. So we affirm in part, vacate in part, and remand. On remand, the district court should consider Fox's alternative argument, which it did not reach below: whether ARI's agreements and any resulting opt-outs are invalid because ARI is engaged in the unauthorized practice of law.

---

**[3]**Examples of inherently abusive pre-certification agreements that might justify rescission are those solicited for the *purpose* of undermining a class action. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 251 (S.D.N.Y. 2005).