RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0127p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

WAYSIDE CHURCH, an Illinois, Not-For-Profit (Ecclesiastical) Corporation, individually and on behalf of a class of all others similarly situated; HENDERSON HODGENS, Van Buren County, individually and on behalf of a class of all others similarly situated, et al.,

*Plaintiffs-Appellees*,

*v.*

VAN BUREN COUNTY, MICHIGAN, in its individual Michigan municipal capacity and on behalf of a class of all other Michigan counties similarly situated, et al.,

*Defendants-Appellees*,

VISSER AND ASSOCIATES, PLLC; DONALD RAY VISSER; DONOVAN VISSER,

*Intervening Appellants*.

⎤
⎟
⎟
⎟
⎟
⎟
⎟  No. 23-1471
⎟
⎟
⎟
⎟
⎟
⎦

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:14-cv-01274—Paul Lewis Maloney, District Judge.

Argued: March 21, 2024

Decided and Filed: June 6, 2024

Before: KETHLEDGE, READLER, and BLOOMEKATZ, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Philip Lee Ellison, OUTSIDE LEGAL COUNSEL, Hemlock, Michigan, for Appellants. David H. Fink, FINK BRESSACK, Bloomfield Hills, Michigan, for the Settlement Class Appellees. Matthew T. Nelson, WARNER NORCROSS & JUDD, Grand Rapids,

Michigan, for the County Appellees.   **ON BRIEF:**   Donald Ray Visser, VISSER & ASSOCIATES PLLC, Kentwood, Michigan, for Appellants.  David H. Fink, Nathan J. Fink, Philip D.W. Miller, FINK BRESSACK, Bloomfield Hills, Michigan, for the Settlement Class Appellees.  Matthew T. Nelson, WARNER NORCROSS & JUDD, Grand Rapids, Michigan, Charles A. Lawler, Cynthia Filipovich, Magy Shenouda, CLARK HILL, Lansing, Michigan, Douglas J. Curlew, CUMMINGS MCCLOREY DAVIS & ACHO, Livonia, Michigan, Thomas W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for the County Appellees.

_____

**OPINION**

_____

KETHLEDGE, Circuit Judge.  In putative class actions, a class comes into existence only when the court actually certifies one in an order entered under Civil Rule 23(c).  Before then, the potential members of the putative class are merely that—and lawyers other than putative class counsel are generally free to communicate truthful, non-misleading information to those potential class members.  But a lawyer may lose that freedom if, in making those communications, the lawyer violates ethical rules.

At issue here is a protective order in which the district court barred Visser and Associates, PLLC ("Visser"), from communicating with potential class members in a putative class action that is now pending before the court.  Visser's communications with members of the potential class were not misleading.  But Visser solicited named plaintiffs, in violation of an ethical rule, and later misled the court itself.  For those reasons, we affirm the district court's order.

I.

A.

Wayside Church owned a summer camp in Western Michigan, until Van Buren County foreclosed on it in satisfaction of a $16,750 tax debt.  The County then sold the property for $206,000 without refunding to Wayside any of the difference.  Wayside brought this putative class action in 2014, claiming that the County had taken its property—in violation of the federal Constitution's Takings Clause—to the extent the summer camp had been worth more than Wayside's tax debt.  A divided panel of our court held that—under the Supreme Court's decision

in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)—Wayside was required to pursue that claim in state court rather than federal. *See Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 815 (6th Cir. 2017). In *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019), however, the Supreme Court overruled *Williamson County*. That eventually revived litigation of this case (and many others like it) in federal court.

On October 13, 2022, our court held that, when the government takes absolute title to property in satisfaction of a tax obligation, the government effects a taking to the extent the property is worth more than the taxes and penalties owed. *Hall v. Meisner*, 51 F.4th 185, 196 (6th Cir. 2022). We applied that holding to precisely the scheme (under the Michigan General Property Tax Act) at issue here. Seven months later, the Supreme Court unanimously agreed with our holding. *See Tyler v. Hennepin Cnty.*, 598 U.S. 631, 647 (2023).

In January 2023—about three months after our decision in *Hall*—the plaintiffs in this litigation filed an amended complaint that named as defendants 43 counties in the Western District of Michigan. In addition, as to every such county, the amended complaint included a named plaintiff whose property had been taken by the county and then sold for an amount greater than the plaintiff's tax debt (pursuant to the same Michigan statutory scheme that we had found unconstitutional in *Hall*). The amended complaint also requested that the district court certify a class comprising (with some exceptions) "[a]ll persons" who owned real property that was foreclosed upon and sold by a defendant county for an amount greater than the person's tax debt. (Our holding in *Hall*, by contrast, applied to anyone whose property was worth more than the tax debt for which it was taken—regardless of whether the county had resold it. 51 F.4th at 195.)

In March 2023, the plaintiffs filed an "unopposed motion for preliminary approval" of a "proposed class action settlement" between the plaintiffs and defendant counties. Under that proposed settlement, the counties would retain 20 percent of the "surplus" they had taken from each property owner, and plaintiffs' counsel would take another 16 percent of that surplus. That would leave each property owner with 64 cents of each dollar taken from her by a defendant county. In that motion, the plaintiffs asked that the court "conditionally" certify the proposed

class and "preliminarily" approve the proposed settlement, for purposes of sending notice of the proposed settlement to the proposed class. *See* Fed. R. Civ. P. 23(e)(1).

B.

In December 2022, Visser and Associates PLLC learned of the proposed settlement and moved to intervene on behalf of "numerous parties"—some of whom Visser was apparently representing in individual takings suits against counties in the Western District of Michigan. Those "parties" sought to intervene in this case (by way of Visser's motion) because, they argued, "the *Wayside* plaintiffs cannot fully represent or protect" their "interest in seeking unpaid just compensation." The district court denied the motion, noting that it was "utterly devoid of any analysis" as to Civil Rule 24, which governs intervention of non-parties.

Around the same time, Visser began sending solicitation letters to property owners who it thought might have takings claims against counties in the Western District of Michigan. The letters addressed the property owners by name and identified precisely the amount of money the county had retained (as a "surplus" beyond the tax debt) following the sale of their property. The letters also said that Visser was currently "engaging in litigation and collection efforts" to "recover funds the county wrongfully withheld," and encouraged the recipients to contact Visser if they were "interested in pursuing a claim." Some of the people who received those letters contacted Visser, which then sent them an "Authority to Represent" agreement. And some of those people then signed and returned the agreement to Visser, thereby retaining Visser as counsel. Others did not.

C.

Meanwhile, on March 24, 2023, the district court preliminarily approved the proposed settlement and conditionally certified the proposed class (the "Rule 23(e)(1) order"). The court's order required that notice of the proposed settlement be sent to members of the proposed class within 45 days (*i.e.,* by May 8), and said that any "putative Class member wishing to be excluded from the Settlement Class" should provide notice to that effect within 120 days of the court's order (*i.e.*, by July 22). The court's order also appointed Fink Bressack, James Shek, and Lewis, Reed & Allen PC as class counsel.

Five days later, the plaintiffs moved for the district court to enter a "protective order" barring Visser from "soliciting or otherwise communicating with class members." In support, the plaintiffs cited the solicitation letters that Visser had sent to named plaintiffs, and argued that those letters were both misleading and intended to undermine "the class" (though none had actually been certified in the case). The plaintiffs also asserted that, in violation of Rule 4.2(a) of the Michigan Rules of Professional Conduct, Visser had sent letters to several named plaintiffs— who (unlike potential members of the putative class) were actually parties in the case and represented by class counsel. That rule bars attorneys from communicating "about the subject of the representation with a person whom" they know "to be represented in the matter[.]" Mich. R. Pro. Conduct 4.2(a).

In response, Visser said it had sent the solicitation letters to the named plaintiffs "inadvertently." Visser also told the court it would not engage in any "further solicitations" of potential class members.

The district court soon ordered Visser to show cause why its solicitations "did not violate" Michigan Rule of Professional Conduct 4.2. In the show-cause order, the court found that "Visser's solicitation letters tiptoe[d] up to" but did "not cross the line from permissible solicitation to misleading, improper communication with potential class members." The court also noted that Visser "claim[ed] to have ceased soliciting clients upon the preliminary approval of the class settlement[.]" But the court said it was "not presently satisfied" with Visser's explanation for why Visser had sent solicitation letters to named plaintiffs who were "specifically listed" in the January 2023 amended complaint. The court therefore ordered "Visser to show cause, in-person" as to why that "conduct did not violate the Michigan Rules of Professional Conduct[.]" The district court scheduled the show-cause hearing for four weeks later, on May 8, 2023.

Before that date, however, Visser proceeded to send "follow up" solicitation letters to at least 17 potential class members who (as Visser described it) had responded to its earlier solicitation letter, but had not returned a signed "Authority to Represent" agreement before March 24 (the day the district court conditionally certified the class and preliminarily approved the settlement agreement). Each of those "follow-up letters" said that "a competing group of

attorneys" had "obtained preliminary certification of a class of claims for settlement" and that Visser "believe[d]" their "claim would be a part of that class." The letters also said that Visser had "serious concerns that the proposed agreement is not fair, adequate, and reasonable for you or the class" and encouraged the putative class members to contact Visser if they were "still interested in retaining our firm." Visser attached to those letters another copy of the "Authority to Represent" agreement, which Visser encouraged the recipients "to sign and return" so that it could "begin the process of reviewing" their claim.

D.

During the show-cause hearing on May 8, 2023, class counsel produced a "follow-up" letter that Visser had sent to a potential class member, Christen McKinney, six days before—which was almost three weeks after Visser told the district court it had stopped soliciting members of the putative class. The court gave Visser ample opportunity to explain all of its relevant actions, with the court engaging with counsel for each side throughout. At the hearing's end, the court concluded as follows:

> The issue for today, and the rifle shot, if you will, of the show cause order was contact with named parties by the Visser law firm. I appreciate the argument regarding the contours of the rule, but based on direct and circumstantial evidence, the Court concludes that the rule was violated[.]

A week later, on May 15, the court issued two orders. In the first, the court formally reprimanded Visser for violating Rule 4.2 of the Michigan Rules of Professional Conduct, finding that Visser had "knowingly" communicated with certain "named plaintiffs."

The second order was the "protective order" at issue here. In that order, the district court enjoined Visser from "soliciting and communicating with, in any form, class members that had not retained Visser before March 24, 2023"—the day the court conditionally certified the class and preliminarily approved the settlement agreement. The court found that Visser had "improperly" solicited at least one putative class member (Christen McKinney) following preliminary certification of the class; that Visser's solicitations "appeared to undermine the class settlement"; and that Visser's actions "appear[ed] to directly contradict" its earlier assertions that it had "ceased soliciting clients after the preliminary approval of the class settlement." The court

also reiterated that Visser had violated Michigan Rule of Professional Conduct 4.2, and said that the protective order would "remedy" that violation.

Visser promptly filed a notice of appeal as to the protective order and asked the district court to stay the order while the appeal was pending. The district court denied that request, but "clarif[ied]" that Visser could communicate with any potential class members who contacted Visser on their own initiative, without having been contacted by Visser before. Thus, as to this lawsuit, the protective order (as clarified by the district court) allowed Visser to communicate only with potential class members who had retained Visser before March 24, 2023 (the date of the Rule 23(e)(1) order), or (as described above) class members who contacted Visser on their own initiative.

Visser then filed a motion in our court to stay the protective order during the pendency of its appeal of that order. Our court granted that request in part, and narrowed the order to bar Visser only from communicating with potential class members who received an unsolicited communication from Visser after March 24, 2023 (again, the date of the Rule 23(e)(1) order). We now turn to Visser's appeal of that order.

## II.

## A.

## 1.

As an initial matter, the county defendants argue that Visser's appeal is moot because the deadline (in the district court's Rule 23(e)(1) order) for potential class members to opt-out of the putative class has passed. But a case becomes moot only if "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). We have no such impossibility here. For one thing, the protective order undisputedly remains in place—and thus reversal of that order would "eliminate the danger" that Visser would be "held in contempt if it should fail to comply" with it. *Alabama v. Pugh,* 438 U.S. 781, 782 (1978); *see Tory v. Cochran*, 544 U.S. 734, 737 (2005).

In addition, the court's Rule 23(e)(1) order itself states that if, "for any reason, the Settlement Agreement is not finally approved or does not become effective, this Order, including but not limited to the conditional Settlement Class and Settlement Sub-Classes certification, shall be null and void and automatically deemed vacated." Here, the district court has not yet decided whether to approve the proposed settlement or to certify the putative class. And even if the district court decides to do those things, then this court—in the event of an appeal—would review that decision. *See, e.g.*, *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (reversing district court's approval of class settlement). Thus, if we reverse the district court's protective order, and the district court (or this court) rejects the proposed settlement, then Visser would face no bar—so far as the district court's orders are concerned—to communicating with unnamed members of the putative class. Hence this case is not moot. *See Chafin*, 568 U.S. at 176.

## 2.

Separately, Visser's appeal of the protective order is interlocutory, which means our jurisdiction here depends on the collateral-order exception to the final judgment rule. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). That exception allows us to review orders "that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). The parties agree that all three of those things are true of the district court's protective order, and that we can consider this appeal. We agree with them. *See Fox v. Saginaw Cnty., Michigan*, 35 F.4th 1042, 1047 (6th Cir. 2022).

## B.

We review the district court's protective order for an abuse of discretion. *See Fox*, 35 F.4th at 1047.

In *Gulf Oil v. Bernard*, 452 U.S. 89, 99 (1981), the Supreme Court "consider[ed] the authority of district courts under the Federal Rules [of Civil Procedure] to impose sweeping limitations" on communications to class members. There (unlike here) the district court had already certified a class. The Supreme Court stated that "a district court has both the duty and

the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* at 100. "But this discretion is not unlimited[.]" *Id.* As a procedural matter, an order limiting communications to class members "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. And substantively, any such order "must be carefully drawn to limit speech as little as possible[.]" *Fox*, 35 F.4th at 1047 (cleaned up and quoting *Gulf Oil*, 252 U.S. at 102); *see also, e.g.*, *In re Community Bank of N. Va.*, 418 F.3d 277, 310, 312 (3d Cir. 2005) (same). Relatedly, in the years since *Gulf Oil*, the Supreme Court has held that attorney communications with potential clients is attorney speech and, as such, "is accorded a measure of First Amendment protection." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995).

### 1.

Here, as a procedural matter, the district court's consideration of the issues related to the protective order was exemplary. The court first entered a show-cause order that carefully identified both the conduct that it found not to be problematic (namely the content of Visser's solicitation letters before the court's Rule 23(e)(1) order) and the conduct that was problematic (Visser's solicitation of named plaintiffs in this case). The court then scheduled and held a show-cause hearing which focused on that problematic conduct (the "rifle shot") and on the disclosure that Visser had continued to solicit potential class members. A week after the hearing, the court entered two orders in which it made specific findings and imposed the restrictions (in the protective order) at issue here. The court further discussed the reasons for those restrictions in its order denying Visser's motion for a stay. Procedurally, therefore, the district court did everything that was required of it.

### 2.

### a.

That leaves the protective order's substance, and specifically the question whether the court's reasons for its restrictions on Visser's communications with potential class members were valid. The first such reason—as the court put it—was that the court imposed those

restrictions pursuant to "its duty to restrict communications that threaten the interference with the proper administration of a class action." Specifically, the court stated, potential class members (like McKinney) were "represented by class counsel" after the court's "preliminary approval of the class" in its Rule 23(e)(1) order. The court added that the "language of [the letter to McKinney] is concerning[,]" in part because "it appears to undermine the class settlement agreement."

Respectfully, that reasoning conflates a district court's preliminary determination (as to certification of a class and approval of a proposed settlement) under Rule 23(e)(1) with a court's *actual* certification of a class under Rule 23(a)-(c). The latter determination is at least a necessary first step toward creating a fiduciary relationship between class counsel and the class. A Rule 23(e)(1) determination, by contrast, is at bottom a notice determination.

Specifically, the main purpose of a Rule 23(e)(1) order, as the rule itself makes clear, is "to determine whether to give notice of the proposal [*i.e.*, a proposed settlement] to the class[,]" Fed. R. Civ. P. 23(e)(1); and "class," in this context, means either "a certified class" or "a class proposed to be certified for purposes of settlement[.]" Fed. R. Civ. P. 23(e); *see also* 4 Newberg on Class Actions § 13:16 (6th ed.) ("The court's primary objective [under Rule 23(e)(1)] is to establish whether to direct notice of [the proposed settlement] to the class, invite the class's reaction, and schedule a final fairness hearing."). As one district court aptly put it: "preliminary approval of a class action settlement is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Outer Banks Power Outage Litig.*, No. 4:17-CV-141, 2018 WL 2050141, at *3 (E.D.N.C. May 2, 2018) (cleaned up). Thus, a Rule 23(e)(1) order is a determination whether to send notice of a proposed settlement to a proposed class.

What a Rule 23(e)(1) order does not do is actually certify a proposed class. Certification is governed by Rule 23(a) and (b), which recite detailed requirements for class certification. In most putative class actions those requirements are indeed the principal focus of the litigation. A district court may certify a class only if it "is satisfied, after a rigorous analysis," that the requirements of Rule 23(a) and (b) "have been satisfied." *Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Moreover, some of those requirements "demand undiluted, even

heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also, e.g.*, *Dry Max*, 724 F.3d at 721 (same). Yet orders entered under Rule 23(e)(1)—like the order here—often contain little or no analysis concerning the requirements of Rule 23(a) and (b). Thus, Rule 23(e)(1) orders do not create a class; only orders entered under Rule 23(c) after a rigorous analysis under Rule 23(a) and (b) do.

The district court was therefore mistaken when it found, in the protective order, that potential members of the proposed class were "represented by class counsel" after the court's "preliminary approval of the class" in its Rule 23(e)(1) order. That order did not create a class. In that order the court did not determine whether the people described in the proposed class definition could, as a group, satisfy the requirements of Rule 23(a) and (b); nor, when the order was entered, had any of those people yet had an opportunity to decide whether to remain in the proposed class. (That instead is what the provision of notice allows them to do.) Moreover, even after certification, "class counsel do not possess a traditional attorney-client relationship with absent class members." *Community Bank*, 418 F.3d at 313; *see also, e.g.*, *Dry Max*, 724 F.3d at 718 (characterizing the relationship as fiduciary); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 788 (3d Cir. 1995) (same). Thus, upon entry of the district court's 23(e)(1) order, "class counsel" was only plaintiffs' counsel—because the only people that counsel represented then (and now) were the named plaintiffs themselves. Communications with potential class members, then, were not communications with persons already represented by another lawyer. The district court's entry of its Rule 23(e)(1) order therefore was not a valid ground on which to restrict those communications. *See Fox*, 35 F.4th at 1050 ("There is nothing inherently abusive about engaging clients who later end up members of a class").

b.

Nor were Visser's communications with potential class members improper on the ground that they "appear[ed] to undermine the class settlement agreement." To the contrary, some proposed settlements should be undermined, *see, e.g.*, *Dry Max*, 724 F.3d at 721; and every proposed settlement should be subject to scrutiny before the court finally approves it. As the Third Circuit observed in *Community Bank*, "the Supreme Court, as well as this court, has

commented on the importance of ensuring that class members make an informed decision whether to remain in a prospective class." 418 F.3d at 313 n.30 (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 549 (1974)). And as we said in *Fox* (where a class had already been certified), "class members should decide for themselves whether they want to opt out." 35 F.4th at 1050.

The importance of truthful, non-misleading information for members of a proposed (or actual) class is increased when, as here, the named parties propose a class-wide settlement. As we emphasized in *Dry Max*:

> The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And thus there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own.

724 F.3d at 715. That observation "is not an indictment of any parties or counsel in particular; it is merely a recognition of the adverse incentives at work in class-action settlements." *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 309 (6th Cir. 2016). And "there exists a special danger of collusiveness[,]" as the Third Circuit has pointed out, when class counsel negotiates its own fees "simultaneously with the settlement." *Community Bank*, 418 F.3d at 308. That danger, specifically, is that "the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir. 1991).

Moreover, the reality is that, once class counsel has reached agreement with the defendant, counsel has every incentive to obtain judicial approval of that agreement. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 & n.30 (1999). By contrast, lawyers other than class counsel are well-situated—by knowledge and incentives alike—to point out to potential class members why their recovery is too low or class counsel's fees too high.

To be clear, none of these observations are meant to imply that any of these dangers manifested in the proposed settlement here. Whether they did is beyond the scope of this appeal.

What is relevant here is that, for all these reasons, a lawyer's truthful, non-misleading criticisms of a proposed settlement are not a valid reason to proscribe his communications with members of a proposed (or actual) class. And here the district court found that Visser's communications to potential class members were not misleading. The content of those communications therefore was not a valid reason to proscribe them.

c.

Yet the district court had additional reasons for the restrictions it imposed on Visser in its protective order. Specifically, the court entered the protective order in large part because it found that Visser had solicited seven named plaintiffs in violation of Michigan Rule of Professional Conduct 4.2(a). In doing so, the district court specifically rejected Visser's assertion that it had sent those letters "inadvertently"—finding instead that Visser had "knowingly" solicited those named plaintiffs.

The district court also entered the protective order in part because Visser's actions had "directly contradict[ed]" its earlier assurances to the court. Specifically, the court found that Visser had sent at least one solicitation letter to a potential class member—Christen McKinney— nearly three weeks after Visser told the court it had "ceased soliciting" unnamed members of the putative class. (It later turned out that Visser had actually sent at least 17 of those letters.) And Visser, for its part, neither disputes these findings nor offers any argument as to why its conduct in this respect was not "abusive." *Fox*, 35 F.4th at 1047.

Visser's ethical violation and lack of candor—in its interactions with the district court itself, no less—gave the court good reason to think that Visser's conduct "pose[d] a serious threat to the fairness of the litigation process" and to the "administration of justice generally." *Id.* at 1047. That a district court must narrowly tailor its restrictions on speech to members of a proposed class, *id.*, does not mean it must allow a demonstrably untrustworthy speaker to keep speaking to them. The court's discretion, instead, allows for a one-strike policy toward lawyers whose actions violate ethical rules. Such was the case here. On this record, the district court did not abuse its discretion when it concluded that Visser's conduct reflected a "likelihood of serious abuses" justifying the restrictions imposed in the protective order. *Gulf Oil*, 452 U.S. at 104.

\*          \*          \*

The district court's protective order—as clarified by the district court and narrowed by our prior order—is affirmed.